# EXHIBIT A

# United States District Court

____Southern____    **DISTRICT OF** ____New York____

DAVID GORDON and JACQUELINE SWISKEY,

Plaintiffs,

vs.

BRIAN PALUMBO, NILES WELIKSON, HORING
WELIKSON & ROSEN, P.C., CAROLE A. FEIL,
JEFFREY FEIL, CAROLE A. FEIL and JEFFREY FEIL,
as Executors of the Estate of LOUIS FEIL, CAROLE A.
FEIL and JEFFREY FEIL d/b/a CLERMONT YORK
ASSOCIATES and BROADWALL MANAGEMENT
CORPORATION, ANDREW RATTNER, VIVIAN
TOULIATOS, ABE RILL, JOSE ANTONIO (a/k/a TONY)
RUIZ, CARLOS GUEVARA, CARL LIEBERMAN,
NANCY S. LIEBERMAN (a/k/a NANCY S. LITTMAN),
BRETT LIEBERMAN, JAY ANDERSON and JAY
ANDERSON as Trustee of THE FEIL FOUNDATION,
ALAN ROSENBLOOM, NICOLE L. GOZ, BERNARD J.
GOZ, BELLA M. GOZ (a/k/a BELLA M. MEIKSON),
STANLEY KALLMANN, BRIAN J. BOLAN, GENNET
KALLMANN ANTIN & ROBINSON, P.C., AMERICAN
INTERNATIONAL GROUP and ATLANTIC MUTUAL
INSURANCE COMPANY,

Defendants.

*AMENDED*

## SUMMONS IN A CIVIL CASE

**CASE NUMBER:**   07 CV 6624 (PKC)

**TO:** (Name and address of defendant)

**YOU ARE HEREBY SUMMONED** and required to serve upon **PLAINTIFF'S ATTORNEY** (name and ad

```
PRO SE DAVID GORDON         PRO SE JACQUELINE SWISKEY
APT 34B                     APT 34B
444 EAST 82ND STREET        444 EAST 82ND STREET
NEW YORK, NY 10028          NEW YORK, NY 10028
```

An answer to the complaint which is herewith served upon you, within _____2 0_____ days after service of this s
upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief dem
the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

## J. MICHAEL McMAHON

OCT 2 2 2007

____CLERK____

____(BY) DEPUTY CLERK____    ____DATE____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| DAVID GORDON and JACQUELINE SWISKEY, | 07 CV 6624 (PKC) |
| Plaintiffs, | PLAINTIFFS DEMAND TRIAL BY JURY |
| vs. |  |
| BRIAN PALUMBO, NILES WELIKSON, HORING WELIKSON & ROSEN, P.C., CAROLE A. FEIL, JEFFREY FEIL, CAROLE A. FEIL and JEFFREY FEIL, as Executors of the Estate of LOUIS FEIL, CAROLE A. FEIL and JEFFREY FEIL, d/b/a CLERMONT YORK ASSOCIATES and BROADWALL MANAGEMENT CORPORATION, ANDREW RATTNER, VIVIAN TOULIATOS, ABE RILL, JOSE ANTONIO (a/k/a TONY) RUIZ, CARLOS GUEVARA, CARL LIEBERMAN, NANCY S. LIEBERMAN (a/k/a NANCY S. LITTMAN), BRETT LIEBERMAN, JAY ANDERSON and JAY ANDERSON as Trustee of THE FEIL FOUNDATION, ALAN ROSENBLOOM, NICOLE L. GOZ, BERNARD J. GOZ, BELLA M. GOZ (a/k/a BELLA M. MEIKSON), STANLEY KALLMANN, BRIAN J. BOLAN, GENNET KALLMANN ANTIN & ROBINSON, P.C., AMERICAN INTERNATIONAL GROUP and ATLANTIC MUTUAL INSURANCE COMPANY, | AMENDED COMPLAINT |
| Defendants. |  |

---

Plaintiffs complain of the Defendants as follows:

This action arises under The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq; The Fair Housing Act, 42 U.S.C. § 3601 et seq; and the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq.

## NATURE OF THE ACTION

This is an action by two New York, New York citizens, both elderly, one a disabled Vietnam War Veteran, in response to an ongoing, increasingly malicious, unlawful torture campaign by the individual owners, executives and employees (and other persons associated with them) of a huge, New York, New York based, family owned, private real estate ownership and operation enterprise, intentionally, maliciously perpetrated to, *inter alia*, make the perpetrators

1

wealthier; retaliate against the Plaintiffs for exercising their legal rights; extort from them a relinquishment of valuable leasehold rights; drive Plaintiffs out of their home; and force them into materially reduced financial and economic circumstances.  The Defendants campaign to date has involved, among other behavior, not only repeated expressions of " hate," but repeated assaults and batteries to Plaintiffs and their property, including an automobile, and other forms of extortion, harassment, intimidation, retaliation and interference.  New York State Supreme Court records and Federal Housing Administration (FHA) correspondence establish that some of the named Defendants are recidivists, having previously similarly tortured a different victim with a similar real estate contractual relationship to the owners at the identical Federally financed property involved in this action.  Plaintiffs seek immediate injunctive relief, damages and attorney's fees for violations of Plaintiff's statutory rights to equal housing opportunity and all other unlawful behavior.

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this Complaint arises under the laws of the United States.

Defendants are subject to the exercise of personal jurisdiction by this Court and venue lies with the Court pursuant to 28 U.S.C. § 1391(b) in that Plaintiffs and some of the Defendants reside in this district, this is the district in which a substantial part of the events, activities and acts giving rise to the claims occurred, and all the Defendants conduct business in this district.

In connection with the acts, activities and behavior alleged in this Complaint, Defendants directly or indirectly used the means and instrumentalities of interstate commerce including, but not limited to:  the mails, wires, telephone communications and other facilities, electronic and otherwise.

This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over claims asserted here that arise under the laws of the State of New York.

## PARTIES AND ACTIVITIES

1.     The Defendants, all of which have participated in, or directly or indirectly invested in, or maintained an interest in, one or more enterprises, the activities of which affect interstate or foreign commerce, have engaged in the commission of two or more acts constituting one or more patterns of racketeering activity.  Plaintiffs were injured in their respective persons, businesses and/or properties by reason of such pattern or patterns of racketeering activity, certain details of which are set forth below.

## AS AND FOR A FIRST CAUSE OF ACTION

2.     At all times hereinafter mentioned, Plaintiffs were and still are citizens of New York, resident in New York County in Apartment 34B, at 444 East 82nd Street, New York, New York, a huge building with hundreds of tenants owned and operated by the Feil Organization Defendants, described in detail below.  All the named defendants except the three Lieberman defendants are, in addition to the detailed descriptions below, also collectively referenced hereinafter as the Feil Defendants.  Plaintiff David Gordon has been the lease tenant in said apartment (which has been and is Rent Stabilized under New York State law) since January 1977, and is a disabled Vietnam War Veteran.  Plaintiff Jacqueline Swiskey has, since 1981, also been living in Apartment 34B and under New York State law has succession rights.  The hundreds of apartments in this residential rental property are dwellings within the meaning of 42 U.S.C. § 3602(b).

3.     At all times hereinafter mentioned Defendant Carl Lieberman and his wife, Defendant Nancy Lieberman, and their son, Defendant Brett Lieberman, were (except as noted below) residents in New York County, in Apartment 35B (one floor directly above plaintiffs), at 444 East

3

82nd Street, New York, New York. Upon information and belief the three Lieberman Defendants (hereinafter also referenced as the Lieberman Defendants) vacated their 35B apartment (which for the Lieberman rental tenants was <u>not</u> rent stabilized) at 444 East 82nd Street, New York, New York and moved on or about December 21, 2003 to a different apartment building in Manhattan, New York, New York. Upon information and belief Carl Lieberman is still the owner or part owner of a very valuable property interest representing a membership or " seat " on the New York Mercantile Exchange in New York City where, as a commodity trader registered with the Federal Commodities Futures Trading Commission (the United States Government's regulatory agency for the complex commodity futures markets exchanges) has been permitted to both own a " seat " interest and engage in such trading activities as the New York Mercantile Exchange allows him to. His wife Nancy Lieberman, upon information and belief, worked for a financial services company. Their son Brett, upon information and belief, is their only child.

4.      While resident in Apartment 35B (a top floor apartment directly above Plaintiffs' 34B, identically configured apartment) the Lieberman Defendants knowingly participated in The Feil Defendants unlawful activity because: (1) it not only was part of their life style, but; (2) gave them huge gratification (consistent with Carl and Nancy Lieberman's repeated Statements to Plaintiffs they " hate " Plaintiffs); (3) was retaliatory for Plaintiffs having previously sued Carl and Nancy Lieberman in New York State Supreme Court, which resulted for a period of time in the cessation of those two Lieberman Defendants' previous early nineties unlawful bedlam creation activity in 35B; (4) the Lieberman's knew that if their overhead bedlam creation could force the rent stabilized 34B Plaintiffs to vacate their 34B apartment the Feil Defendants would be able to charge a vastly higher rent for 34B immediately and in the future (which would enhance and materially benefit their position with the Feil Defendants, possibly resulting in the Feils giving

them yet more " free rent " as a reward, which they repeatedly boasted of having received from the Feil Defendants); (5) the Lieberman Defendants also participated in the Feils' activities because they knew: it would probably be impossible to find another penthouse floor apartment in another building with another landlord where Carl and Brett Lieberman would be permitted to daily and nightly roll steel bar bells and continuously dribble basket balls and engage in other bedlam creation on unlawfully uncarpeted, landlord-maintained, bare-wood floors, in continuous violation of a standard New York City apartment lease; and (6) also knew it would be very difficult to find another such penthouse level apartment where Carl Lieberman could pop up to the roof for a fast, private marijuana smoke and not be noticed coming back down, via stairwells, all doped up, preparatory for literally hours of basketball dribbling on his uncarpeted, bare-wood, landlord-maintained floors; and (7) where another landlord would actually continuously permit, encourage and reward the Lieberman's to maliciously harass the older, Rent Stabilized tenants below them.

5.       The large rental apartment building known as 444 East 82nd Street, in which Plaintiffs reside, located on York Avenue between 81st and 82nd Streets in Manhattan, New York City, New York is actually two connected buildings: a 35 story tower facing, on its East side, the East River, and a smaller, much lower building to the West, connected by a central lobby section, both over a large garage underneath. The property is owned, according to Defendants' information provided to both the Federal Government and New York State, by a partnership called Clermont York Associates, the principal, general partners of which included and may still include the Estate of the late Louis Feil, deceased, and two of his children, Carole A. Feil and Jeffrey Feil (the Feils may have shifted part of their ownership interest to The Feil Foundation.) Who, according to estate documents filed with the Nassau County, New York Surrogate Court's office, File No. 307981, were both named Executors and principal beneficiaries in Louis Feil's will, and are individual

partners in the various real estate and other properties Louis Feil had accumulated. Said Nassau County-filed documents indicated that Louis Feil left his beneficiaries an estate worth more than a quarter billion dollars at the time of his death and, presumably from inflation alone, vastly more today. Nassau County-filed estate documents also indicate Defendants Carole A. Feil and Jeffrey Feil, apart and aside from any other Estate benefits, each initially took at least $1,000,000 in Executor Fees. Louie Feil's Estate, at the time of his February 3, 1999 death, apparently included not only his principal ownership interest in 444 East 82nd Street, New York, New York (the building in which Plaintiffs have lived and are tenants) but a considerable group of other valuable real estate related property interests and about 14 million dollars in cash and securities.

6.    Louie Feil's estate appears to have also included something that apparently is neither a single corporation or partnership or any other legally sanctioned business entity, but rather a group of headquarters type employees and associates, operating mostly out of offices at 7 Penn Plaza, in New York, New York, which enterprise group the Feils refer to, both on their New York City telephones and in print advertisements and announcements relating to their real estate interests, as " THE FEIL ORGANIZATION AND AFFILIATES." Their telephone system, for instance, automatically announces to callers " You have reached The Feil Organization and Affiliates," via which the Feil Defendants and their defendant employees and associates own and control and operate various real estate properties. One of which is the building Plaintiffs reside in, 444 East 82nd Street in Manhattan. Defendant Brian Palumbo claimed to Plaintiff David Gordon, at one point, the Feils own and control six thousand (6,000) apartments. Carole and Jeffrey Feil also own and control something they call Broadwall Management Corporation, which they apparently use for tax and other purposes to collect the rents from tenants in the 444 East 82nd Street building in

which Plaintiffs live.    Broadwall Management is clearly part of the same family " FEIL ORGANIZATION," despite any fictions the Defendants or their lawyers attempt to perpetrate.

7.    Defendants Brian Palumbo, Niles Welikson, Andrew Rattner, Vivian Tuliatos, Abe Rill, Tony Ruiz and Carlos Guevara are all employed and controlled by Defendants Carole A. Feil and Jeffrey Feil, and Horing Welikson and Rosen, P.C. appears to be a harassment organization. Actually a group of lawyers located near New York State's Queens County, N.Y. Division of Housing and Community Renewal (DHCR) office that repeatedly represent " THE FEIL ORGANIZATION AND ITS AFFILIATES " when Feil building tenants ask that State agency for relief from unlawful rent increases, decreased service and other numerous attempts to perpetrate unlawful behavior by the Feils and their associates.    Defendant Niles Welikson's small group of lawyers are, in the real world, effectively part of " THE FEIL ORGANIZATION " and obviously function as such.    Welikson and his group has engaged in various malicious abuse of process type activities and mail fraud to intimidate, retaliate and coerce Plaintiffs and other tenants.    Niles Welikson and his group of lawyers take their instructions directly from, and interact directly with, by wire and mail and other instrumentalities, the other " FEIL ORGANIZATION " Defendants operating out of the " ORGANIZATION'S " 7 Penn Plaza, Manhattan headquarters in New York City, New York and elsewhere.    The Feils for many years have sought to perpetrate the fraudulent fiction that Welikson and his group are " outside counsel," but the only thing they appear to be outside of is Manhattan Island.    In short, Welikson and his law firm function much like the fictionally-independent, actually controlled law firms run by large insurance companies that, like " THE FEIL ORGANIZATION AND ITS AFFILIATES " are constantly being sued, fined and otherwise punished by persons, courts and government regulators for their various unlawful behavior (such as defrauding insureds and intentionally not paying legitimate claims).    Upon

information and belief " THE FEIL ORGANIZATION AND ITS AFFILIATES " may be, in part, variously self-insured to varying degrees, and may have used, and/or currently be using Welikson's services in relation to persons who have damage claims against " THE FEIL ORGANIZATION AND ITS AFFILIATES " or any of them; either separately or in conjunction with the Feil Organization and its Manhattan, New York staff and/or outside insurance companies (via insurance policies, reinsurance and related arrangements, or claim subrogation, contribution, participation, indemnification and other damage or liability claims relationships).  Defendant Niles Welikson clearly is part of the Feil's Racketeering Enterprise and has, in a pattern, been intimately involved in manufacturing the Feil's mail fraud, extortionate abuse of process and other predicate unlawful behavior directed against the Plaintiffs.  He and his law firm are obviously very closely run by and through the Feils and Defendants Palumbo, Rattner, Rill and Tuliatos.

8.      Defendant Niles Welikson, nominally operating from the address on the top of the August 17, 2004 grossly false and fraudulent letter mailed from Welikson to Plaintiffs reprinted below, obviously also communicates with the rest of the Feil Organization by mail and wire, including telephone and fax (and presumably by E-mail, internet and cell phone).

9.      Defendant Brian Palumbo (who has had at all times hereinafter mentioned) so much actual authority, influence and control over " THE FEIL ORGANIZATION AND ITS AFFILIATES " principals, properties, employees, decisions, behavior and policies, his telephone system extension number, during 2005, was the very first number in the Feil's 7 Penn Plaza system, and he uses the title General Counsel. All of the other FEIL ORGANIZATION related individual Defendants in this matter, including Defendant Niles Welikson (and via Niles Welikson, Defendant Horing Welikson & Rosen, P.C.) defer to Brian Palumbo (including, apparently, Carole and Jeffrey Feil);

who clearly <u>tells</u> them what they can and cannot do; and how to try to fog and/or conceal their actual behavior and liabilities or attribute their unlawful behavior to others.

10.    Defendants Andrew Rattner and Abe Rill, also operating out of the Feil's 7 Penn Plaza, New York City, New York Manhattan offices, are referred to, respectively, as Executive Vice President and Property Manager. Defendant Tony Ruiz is and has been at all times hereinafter mentioned Superintendent for the Feil's big 444 East 82nd Street, New York, New York building, where he occupies one of the apartments and parks his automobiles. Defendant Carlos Guevara is nominally a handyman at the same 444 East 82nd Street, New York City building, but like other much younger handymen, has been repeatedly left in charge of the building. He claims to be the only person who actually understands the building's mechanical and electrical systems from his decades of work with them. Guevara is treated as a boss by other building employees, except Tony Ruiz.  He is apparently the buildings chief, <u>un</u>licensed plumber, electrician and air conditioning/heating technician and during the course of his long tenure, for instance, has recently either been told to and/or been allowed to dump huge amounts of building system waste water directly on the concrete floors of the building's roof top machine rooms.  Which ultimately permeated the concrete floors, resulting in, and contributing to, among other things, toxin-laden water entering Plaintiff's 34B apartment through the ceilings and walls.  Guevara and other Defendants were told by Plaintiffs repeatedly to cease such dumping, but only ceased temporarily in late 2006, and only long after Plaintiff David Gordon filed a complaint with the DHCR. Tony Ruiz <u>personally</u> reengaged in such dumping, with Carlos Guevara, on the morning of Saturday, May 26, 2007, in retaliation for Plaintiff David Gordon having complained, that morning, that the Feil Defendants had, as they had done before over major holiday weekends and other periods, shut off the building's central air conditioning to increase their own profits.  This May 26, 2007

9

dumping immediately split open Plaintiffs' Apartment 34B ceiling and caused a sudden torrent of water to pour into Apartment 34B. Which Defendants had to know would happen.

11.     Niles Welikson and Abe Rill have repeatedly invited Plaintiffs to sue the Defendants. Defendant Vivian Tuliatos is a highly trusted personal assistant to Jeffrey Feil and apparently functioned similarly to the late Louis Feil, father of Defendants Jeffrey Feil and Carole A. Feil, Tuliatos telephoned Plaintiff David Gordon after Plaintiff spoke to Jeffrey Feil on the telephone, telling him to stop the Lieberman Defendants' unlawful activities detailed elsewhere in this Complaint. Tuliatos told Plaintiff David Gordon she had " a handle on " the situation, which thereafter became worse and worse.

12.     Plaintiffs, on too many dates to individually detail herein, also demanded, repeatedly, by mail and telephone, to Carole A. Feil, Jeffrey Feil, Brian Palumbo, Niles Welikson, Andrew Rattner, Abe Rill, Tony Ruiz, Carlos Guevara, and to their associates, including Carl and Nancy Lieberman, and other trusted Feil employees, that they immediately cease and desist from their widening spectrum of unlawful activities and behavior directed toward Plaintiffs; to no avail. The torture became progressively worse. To date, for instance, Plaintiff David Gordon has had to call the Police almost 90 times to simply reduce the noise, both overhead and lateral, emanating from other apartment tenants the Feil Defendants have clearly incentivized to harass Plaintiffs. The Feil Defendants have also engaged in other torture activities like intentionally, flatly refusing continuously, to repair the exterior brick facade of their building above and around Plaintiff's windows, causing Plaintiff's living room to repeatedly be flooded with water and toxic gases emanating from cracks in their building's concrete and plaster walls and ceilings (due to their bulk, Plaintiffs' filings, and the Feil Defendants' fraudulent responses, with New York State's Division of Housing and Community Renewal (DHCR) – which have to date produced no relief –

are included herein by reference) (those documents and their included photographs also detail some of the Feil Defendants other, ongoing-to-this-day, malicious behavior toward Plaintiffs).

13.     Shortly after then 64 year old Plaintiff David Gordon had very critical surgery, Defendant Niles Welikson and Horing Welikson & Rosen, P.C. mailed an August 17, 2004-dated letter (reprinted below) which was obviously conceived by him and Brian Palumbo in concert with other, named, " FEIL ORGANIZATION " Defendants, which is so false, fraudulent and malicious it is breath taking; especially in its scope, defamatory content, audacity and unlawful intent. This letter is extraordinarily fraudulent. Its also grossly fraudulent, allegedly " enclosed " copy of an alleged August 5, 2004-dated alleged " letter " from Defendant Tony Ruiz, obviously either never actually existed as claimed, and/or was never actually delivered to Plaintiffs by any means; and (contrary to Welikson's outrageously fraudulent letter) was never placed by either Plaintiff under the door of " Apartment 35B " (previously occupied by the Lieberman Defendants who had moved out by the last day of December 2003). (If the fraudulent alleged August 5, 2004-dated letter ever existed as fraudulently claimed, and if anyone ever " placed it under the door of Apartment 35," as falsely and fraudulently claimed by the " FEIL ORGANIZATION " Defendants, it could only have been so intentionally misplaced, under the door of the apartment directly above Plaintiffs, by Defendant Tony Ruiz, the building's Superintendent, either personally or by another " FEIL ORGANIZATION " employee under Ruiz' control).  Tony Ruiz is such an extraordinarily dishonest, criminal type person, he had, for instance, not long before the above-referenced August 17, 2004-dated letter period, literally assaulted and battered Plaintiff's empty automobile, which was properly and peacefully parked, in its normal, rented space in the basement garage at 444 East 82nd Street, writing " BASTARD " in his own handwriting on the rear windshield. Defendant Tony Ruiz clearly has, and obviously will again, repeatedly, lie, cheat and

perpetrate other unlawful, malicious acts and behavior, either on his own or on instructions from other " FEIL ORGANIZATION " Defendants. The August 17, 2004 false, fraudulent and defamatory Niles Welikson letter reprinted below (and its alleged August 5, 2004-dated alleged " enclosed copy ") must have taken the " FEIL ORGANIZATION " Defendants days to conceive, conceptualize and compose and was clearly created as a prospective bogus defense to this litigation, which Defendants Brian Palumbo, Niles Welikson and Horing Welikson & Rosen, P.C. knew was coming. Because Plaintiffs had repeatedly warned them to cease their unlawful behavior, which behavior was ACTUALLY intended to force Plaintiffs out of their valuable Apartment 34B leasehold and occupancy and otherwise damage them as badly as Defendants could get away with without immediate criminal action by the Police.

14.    ALL of Plaintiffs' numerous written (and oral) warnings and unlawful-behavior-cessation-demands to " THE FEIL ORGANIZATION " Defendants are included herein and made a part of this Complaint by reference, including the " Complaints " referenced in the third grossly fraudulent paragraph of the August 17, 2004-dated letter mailed by Defendants Niles Welikson and Horing Welikson & Rosen, P.C. Who had every reason to know they were sending a malicious, false and fraudulent letter that was intended to harass and prejudice Plaintiffs with lawyers, judges and jurors in the litigation they knew was coming.

15.    Apart from the addresses at the top of the August 17, 2004-dated letter (reprinted below), the only thing that is not materially false, fraudulent and malicious is the third paragraph admission that " THE FEIL ORGANIZATION " was and is " able to do any necessary repairs " to Plaintiffs' apartment. But the letter fraudulently conceals that the Defendants ACTUALLY were not and still are not " ready " or " willing " to prepay for the related expenses, that are prerequisite necessities, such as for temporary acceptable Plaintiffs hotel lodging, storage, property moving

and removing, insurance, communications, etc.  To say nothing of rent refunds and compensation for loss of use, etc.  The Feil Defendants are not actually " ready " or " willing " to pay or do anything that would benefit Plaintiffs unless Plaintiffs abandon apartment 34B and the lease to it. Plaintiffs do not believe, after considering what obviously cannot be included in this Complaint, that a jury will ever believe any of Defendants' fabricated letter scam is anything but part of a mail fraud and extortion scheme.  " THE FEIL ORGANIZATION " Defendants never did do the actually necessary major repairs they not only knew for a long time period were ACTUALLY " necessary," including but not limited to:  concrete repair of a growing to-this-day cistern (cavity) in the concrete floor of the identically configured 35B apartment, above Plaintiffs' 34B (caused by the badly leaking, outside masonry facade on the building's south wall allowing rain water and melting snow to enter the cistern) (resulting in toxin filled water and toxic gases entering Plaintiffs' apartment through its disintegrating ceiling); and remediation (including prepaying all of Plaintiffs' associated necessary expenses, etc) of the cumulating consequences of that and other Defendant multiple water leaks, resulting from both pipe leaks and improper, ineffective or non-existant maintenance of the building's walls, windows and other parts, and ongoing dumping of waste water onto the building's roof-top machine room floor.

16.    Also reprinted below is Plaintiff's July 6, 2005 Certified letter mailed to " THE FEIL ORGANIZATION " Defendants detailing one important part of those Defendants outright, ongoing frauds. To this day,  " THE FEIL ORGANIZATION " has not, and continues to refuse to repair both the worsening cistern situation described in Plaintiffs' July 6, 2005 letter and outside building walls allowing water to enter the building.  " THE FEIL ORGANIZATION " Defendants are, to say the least, malicious, venal, outright mail fraud liars and extortionists and will undoubtedly continue to lie to this Court.

13

17.    The aforesaid actions were also intended to intimidate, harass and dissuade Plaintiffs, and compel them to refrain from exercising their legal rights, *inter alia*, to collect money rightfully due, as well as to maliciously and intentionally inflict emotional harm.  Defendants acted with a reckless disregard for the truth and the law.  Defendants sought to set up Plaintiff David Gordon for ridicule and scorn and to have him held up to such ridicule and scorn by prospective lawyers, judges and jurors and to cause him future embarrassment and humiliation.  Because of Defendants ongoing campaign to ACTUALLY PREVENT PLAINTIFFS FROM HAVING THE QUIET, PEACEFUL USE OF THEIR APARTMENT, WHILE LYING ABOUT THEIR ACTUAL INTENTIONS, PLAINTIFFS WERE REPEATEDLY DISTRACTED FROM CONCENTRAT- ING ON THEIR AFFAIRS, LOST VITAL SLEEP, AND LOST POTENTIAL BUSINESS INCOME.  Defendants' August 17, 2004 letter-scam was also, effectively, an unlawful effort to extort, by deception, a de facto permanent waiver and dilution from Plaintiffs of their rights to use legal process against the Defendants for violating their already established legal rights. Defendants were well aware they were weakening Plaintiffs financially by their behavior.

18.    **DEFENDANTS AUGUST 17, 2004 EXTRAORDINARILY FALSE AND MALICIOUS LETTER SCAM, MANUFACTURED TO DECIEVE AND PERPETRATE A FRAUD ON JURORS, THE COURT AND PLAINTIFFS**

| MILTON HORING (1936-1985) | **HORING WELIKSON & ROSEN, P.C.** | PETER H. SKIADAS |
|---|---|---|
| NILES C. WELIKSON. | **ATTORNEYS AT LAW** | DEBRA GENETIN TATE** |
| PHILIP A. ROSEN | 11 HILLSIDE AVENUE | CHRISTOPHER J. DUVAL |
| LEONARD R. KAPLAIN | WILLISTON PARK, NEW YORK  11596 | RICHARD T. WALSH |
| DANIEL ROSKOFF ** | PHONE 516-535-1700 | UYGAR C. KONUR* |
| ROGER A. CORREDINE | FAX 516-535-1701 | RANDI B. GILBERT |
| | | CORINA STREEKMANN |
| | | NIKOLAOS PREPONIS |
| * Member of the N.Y. & N.J. Bar . | | |
| ** Member of the N.Y. & CT Bar | | HOWARD STERN, Of Counsel |

August 17, 2004

Mr. David Gordon
444 East 82nd Street, Apt. 34B
New York, New York 10028

Re:    444 East 82nd Street, Apt. 34B
New York, New York 10028

Dear Mr. Gordon:

Please be advised that we have been requested by our client, Broadwall Management Corp., managing agent of the above subject premises wherein your reside, to contact you with respect to several items involving your tenancy.

Initially, I have enclosed a copy of a letter to you dated August 5, 2004 from Mr. Tony Ruiz, the superintendent of the subject premises, the contents of which are self-explanatory. We are advised by our client that rather than respond to the letter you have, on three separate occasions, placed it under the door of Apartment 35-B. The letter obviously does not in any way involve that particular tenant and your placing it under her door has caused a great deal of concern and confusion. You are therefore requested to refrain from any such action in the future.

We are further advised you have made certain complaints regarding the conduct of your next door neighbor and alleged lack of carpeting and noise emanating from Apartment 35B. The superintendent has examined the floor of Apartment 35B and found it to be 90% carpeted as required by the tenant's lease. The neighboring tenant about whom you complain is an elderly person and the Landlord has not received any other complaints with respect to his tenancy. The situation has also been investigated to ascertain if any visitors to his apartment might be the source of your allegations and our client has found that your neighbor has few visitors, none of whom appear to be the type of people who would be troublesome in any way.

Our client remains ready, willing and able to do any necessary repairs to your apartment as well as to accommodate you with respect to your tenancy in any manner that is reasonable. However, at this juncture, there does not appear to be anything more for our client to do other than to attend to any repairs that may be needed in your apartment if and when you inform them as to exactly what those repairs are. If you have any other suggestions with respect to your

**HORING WELIKSON & ROSEN, P.C.**

To: Mr. David Gordon

August 17, 2004

-2-

tenancy that you believe involve actions that can reasonably be taken by the landlord please so inform us in writing.

Very truly yours,

*Niles C. Welikson*

NCW:kc

NILES C. WELIKSON

cc:    Mr. Abe Rill
       Mr. Tony Ruiz

15

19.        **DEFENDANTS' AUGUST 5, 2004-DATED BOGUS, FRAUDULENT**
                  **AND FALSE ALLEGED " ENCLOSED " LETTER COPY**

Aug-10-2004  04:54pm  From-                                    T-515  P.002/005  F-448

                         Broadwall Management Corp
                               Clermont Tower
                           444 East 82nd Street

                                   Office of the Superintendent

                                   Date: Thursday, August 05, 2004


       Re:  Apartment:  34-B


       Dear Tenant:  Mr. Gordon
                 It will be necessary to have access to your
       apartment on <u>at your convenience</u> for the purposes of making
       certain repairs.

       The repairs:  You will kindly advise us the nature of these
       repairs when we get there.  You have made the office aware
       of the need of such repairs but failed to indicate what they
       were. One of them must be the house phone since you failed
       to answer it on various occasions.

       <u>Please make the appointment to fall between Tuesday thru</u>
       <u>Friday between the hours of 11:30 A.M. and 5:00 P.M</u>

                 Please make arrangements to either be home or have
       someone stay home.  You may also leave your keys, for this
       repair, <u>at the Front Desk</u> with a telephone number should we
       find it necessary to contact you.

                 *Your Cooperation is most appreciated*

       *Cordially At Your Service*


       *Mr. Tony Ruiz*
       *Superintendent*
       *Tel/Fax: 1(212) 861-2700*
       *House phone No. 0015*

       Cc:  Mr. Abe Rill  ( Building Property Manager)


                                      16

20.    **PLAINTIFF'S JULY 6, 2005 CERTIFIED LETTER
TO THE FEIL ORGANIZATION DEFENDANTS**

BY CERTIFIED MAIL, RETURN RECEIPT NO. 70001530000158752716

Carole Feil                                         Apartment 34B
Clermont York Associates                            444 East 82nd Street
Seven Penn Plaza (Suite 618)                        New York, N.Y. 10028
New York, N.Y. 10001                                July 6, 2005

RE: THE TOXIN-FILLED RAIN AND OTHER WATER POURING THRU MY 34B
    LIVING ROOM APARTMENT CEILINGS FROM THE ABOVE 35B APARTMENT'S
    CISTERNED AND CRACKED CONCRETE FLOORS THAT YOU CONTINUE TO
    REFUSE TO EXPOSE, BREAK OPEN AND REPAIR IN THE 35B APARTMENT.
    WHICH WORSENING CISTERNS AND CRACKS ARE HEAVILY LOADED WITH MOLD,
    VERMIN DEBRIS AND OTHER TOXINS NOW ENTERING MY APARTMENT. ALL
    OBVIOUSLY CAUSED AND WORSENED BY YOUR BUILDING'S NEVER-PROPERLY-
    REPAIRED-TO-THIS-DAY, LEAKING EXTERIOR SOUTH FACADE MASONRY, AND
    STONE WINDOW SILLS, ABOVE THE LEVEL OF MY CEILINGS; WHICH NEW
    YORK'S DEPARTMENT OF HOUSING AND COMMUNITY RENEWAL (DHCR) ORDERED
    YOU LONG AGO TO REPAIR (ALONG WITH THE BUILDING'S OTHER LEAKS);
    BUT WHICH YOU HAVE INTENTIONALLY NOT DONE (ALONG WITH YOUR OTHER
    UNLAWFUL BEHAVIOR) TO HARASS ME OUT OF MY RENT STABILIZED APARTMENT.

I again demand that you instantly expose the faulty concrete floor area
in the 35B apartment above my ceilings (under the uncarpeted wood floor
tiles belonging to you), have concrete experts open the cisterned,
cracked areas, remove the accumulated mold and toxin material, and
properly repair the 35B concrete floor areas. And, I again demand, of
course that you instantly have genuine experts actually fully repair
and/or replace the defective exterior south and east facade masonry,
and the contiguous stone window sills above the level of my living room
ceilings; which are clearly still defective and leak water and air.

Your Brian Palumbo promised me on the telephone more than six (6) months
ago, he would have this ongoing outrage properly fixed. But he has not
done so. Nor has anyone else associated with you actually even tried.

And if you and your cohorts continue to believe any Federal or New York
judge will believe any of the unlawful frauds your employees and your
associates have been furiously concocting to cover your ongoing refusals,
you will shortly find you are dreaming.

Without prejudice; all rights are reserved without exception, reservation
or qualification and no waivers, constructive or otherwise, have, are or
will be granted.

                                        _David Gordon_

                                        DAVID GORDON
                                        TENANT

Copies to: - New York State Department Of Housing And Community Renewal
           - Carole Feil, 18 Voorhis Avenue, Rockville Centre, N.Y. 11570,
             By Priority Mail.
           - Brian Palumbo, Clermont York Associates, Seven Penn Plaza
             (Suite 618), New York, N.Y. 10001, By Certified Mail, Return
             Receipt No. 70001530000158752709.

21.     The creation, manufacture, faxing and mailing of THE FEIL ORGANIZATION'S false and fraudulent August 17, 2004 letter and its bogus August 5, 2004-dated alleged " enclosed " letter copy (both reprinted above) were defamatory and intended to prevent Plaintiff David Gordon from successfully exercising his rights in the Courts, and by such prevention interfere with his valuable lease contract for Apartment 34B, and severely damage him and Jacqueline Swiskey, and did so; which behavior was and is unlawful.  Said creation, manufacture, faxing and mailing was done with THE FEIL ORGANIZATION Defendants acting in conspiracy and in concert with each other, and with malice, and with intent to punish Plaintiffs for exercising their legal lease and housing rights.

22.     Said Defendants knew Plaintiff David Gordon had been very ill and that they were acting in concert and in conspiracy to inflict great present and future mental distress, anguish and suffering upon both Plaintiffs.

23.     As a result of the foregoing Plaintiffs demand damages of Two Hundred Million Dollars ($200,000,000), before such tripling as the law may allow.

## AS AND FOR A SECOND CAUSE OF ACTION

24.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs inclusive, as if more fully set forth herein.

25.     As a result of Defendants' wanton, willful and malicious behavior set forth in the First cause of action, Plaintiffs are entitled to punitive damages in the amount of Three Hundred Million Dollars ($300,000,000).

## AS AND FOR A THIRD CAUSE OF ACTION

26.     THE FEIL ORGANIZATION Defendants, subsequent to having realized the United States Department of Housing and Urban Development (HUD) New York Office (which has some authority over some of THE FEIL ORGANIZATION'S properties that enjoy Federal mortgage

18

financing) was not going to actually do anything effective to prevent a new, incentivized intentional torture campaign directed at the Plaintiffs (like the one that Plaintiff had hoped to terminate by properly complaining directly in person and in writing to HUD's New York City Office between late December 2000 and summer 2001) from commencing, FEIL ORGANIZA-TION Defendants, and the Lieberman Defendants did commence a substantially similar, but increasingly more vicious, malicious campaign in late April 2003. Some aspects of which by the Lieberman Defendants were actually continued at 444 East 82nd Street long after the Lieberman Defendants had vacated their 35B apartment, during or about the last week of December 2003 and moved elsewhere. The basic nature and details of this sort of campaign are meticulously set forth and documented in Plaintiff's letters (with attached documentation) to HUD's New York City officials dated: December 26, 2000, April 7, 2001 and June 28, 2001 (which, because of their bulk, are all, in their entirety, with all attachments, included in this Complaint and made a part hereof by reference). (THE FEIL ORGANIZATION Defendants have had all of these documents for years.) Reprinted below for immediate reference are only Plaintiff David Gordon's December 26, 2000 initial certified letter to HUD's New York City office and one of the four attached documents listed on the December 26, 2000 letter's first page and accurately described thereon as follows: " a complete copy of a September 18, 1997, also self-explanatory, State Supreme Court Verified Complaint, by former 444 East 82nd Street, New York, NY/Clermont Tower Tenant Albert Merget, who was obviously also tortured by The Feil Organization/Clermont York Associates-related persons mailed in our letters in a startlingly similar pattern of unlawful landlord-generated behavior ! Mr. Merget's 1997 New York State Supreme Court Complaint is discussed in more detail below." Unlike the above-reprinted, extraordinarily fraudulent August 17, 2004 FEIL ORGANIZATION letter and its bogus, August 5, 2005-dated alleged letter copy,

19

the following reprinted, December 26, 2000 letter to HUD from Plaintiff David Gordon and

September 18, 1997 New York Supreme Court Verified Complaint of also tortured FEIL

ORGANIZATION tenant Albert Merget, are genuine, actual documents, not scams.

27.    PLAINTIFF DAVID GORDON'S DECEMBER 26, 2000 LETTER TO THE
       UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

                 BY CERTIFIED MAIL, RETURN RECEIPT NO. P580168064.

                                              Apartment 34B
                                              444 East 82nd Street
                                              New York, N.Y.  10028

                                              December 26, 2000
Mr. William D. Carrington
Project Manager (Realty)
Housing Division/Multi Family Asset Management
U.S. Department of Housing and Urban Development
Room 3200, 26 Federal Plaza
New York, N.Y.  10278-0068

Dear Mr. Carrington:

RE:  THE OUTRAGEOUS, INCENTIVIZED, INTENTIONAL TORTURE SITUATION YOU
     PROMISED TO COMMENCE AN IMMEDIATE INVESTIGATION OF WHEN I VISITED
     WITH YOU AT YOUR OFFICE ON FRIDAY, DECEMBER 22, 2000.

To avoid as much unnecessary repetition and redundancy as possible, -
especially after you made clear you are familiar, in detail, with the
so-called Feil Organization, its properties, persons and Federally
covered mortgage financing, etc. - attached please find copies of the
following four documents:

  - a December 15, 2000 self-explanatory, certified letter from me and
    Jacqueline Swiskey (with its attached copy of an also self-explanatory,
    January 4, 2000-letter mailed to me from Niles Welikson, attorney for
    Clermont York Associates), sent to certain principal partners, control
    associates and culpable employees of Clermont York Associates, The
    Feil Organization and its affiliates (including Jeffrey Feil, his
    sister Carole A. Feil, Martin B. Bernstein, et al);
  - a December 18, 1999 self-explanatory certified letter from me to the
    persons named at its beginning and end;
  - a November 10, 1999 self-explanatory, certified letter from me also
    to the persons named at its beginning and end; and
  - a complete copy of a September 18, 1997, also self-explantory, State
    Supreme Court Verified Complaint, by former 444 East 82nd Street,
    New York, NY/Clermont Tower Tenant Albert Merget, who was obviously
    also tortured by The Feil Organization/Clermont York Associates-
    related persons mailed in our letters in a startlingly similar
    pattern of unlawful landlord-generated behavior !  Mr. Merget's
    1997 New York State Supreme Court Complaint is discussed in more
    detail below.

                                   20

Obviously, The Feil Organization's owners and operators, among other things, at some point made an illegal economic decision: to utilize and encourage, for their substantial financial benefit, an ongoing malicious interference with the rent-stabilized apartment 34B tenancy of myself and Jacqueline Swiskey (my lease extends from January 1977) by the dope-smoking, beligerant, 35B adult tenants (who have previously been sued in New York State Supreme Court for substantially similar unlawful behavior) to torture Ms. Swiskey and myself into vacating 34B, so The Feil Organization can greatly raise the regulated rent on our apartment; and, in the process, keep us from collecting substantial monetary damages, etc, for flooding and related problems The Feil Organization persons were the cause of - not a penny of which has ever been paid or offered in payment, despite demands.

Moreover, The Feil Organization's associated persons, as you will note from the attached documentation, have repeatedly lied, and caused their employees to relay lies to us about: their refusal to even meaningfully move to fulfill their prior false and fraudulent promise to evict the concussion and bedlam producing 35B tenants above us; and their continued maneuvering and manipulation of the 35B tenants to continue their incessant concussion and bedlam production.

This unlawful behavior is also retaliatory in nature.

Like former 444 East 82nd Street/Clermont Tower tenant Albert Merget (a copy of whose September 18, 1997 New York State Supreme Court Complaint against Clermont York Associates, Jeffrey Feil, his lieutenant Abe Rill, and Broadwall Management Corp. is attached hereto), I was, along with The Clermont Tenant's Association, a successful Petitioner to New York's Department of Housing and Community Renewal (DHCR) in a recent Petition For Administrative Review, which was upheld against Clermont York Associates by New York's Supreme Court and its Appellate Division, and, recently New York's highest Court, The Court Of Appeals. My two personal Affidavits to the DHCR were, in fact, conspicuously quoted by the DHCR's chief litigation counsel in her successful brief to New York's Supreme Court.

As you can see from former tenant Albert Merget's suit, (which also includes Racial Discrimination causes of action - something The Feil Organization has also been separately sued for by others in the United States District Court) the retaliatory pattern is very clear. Indeed, like Mr. Merget's suit statements of his ordeal of violent threats, etc, the disco-floored, uncarpeted, 35B, dope-smoking tenant above us has threatened me with death and physical violence (which was reported to New York's Police Department) for complaining about his use of his uncarpeted, disco-floored 35B apartment as a basketball court floor and gymnasium etc, etc. Which use The Feil Organization's owners, associates and employees have obviously been incentivizing and encouraging, particularly by: DOING NOTHING ACTUALLY MEANINGFUL TO DISCOURAGE IT, and by allowing and maintaining (e.g. sanding and polishing, etc) 35B bare-wood, disco-floors, and by providing rent incentives, etc.

One particularly outrageous aspect of this torture situation is, I am reliably informed, that having previously received from The Feil Organization's owners and associates (INCLUDING JEFFREY FEIL PERSONALLY) substantial free rent for long-since repaired water leakage, the malicious 35B tenants have become adept at manipulating " the system " to extract further free rent and disco-floor maintenance " deals," including artifically wetting painted surfaces in their apartment to show " HUD " inspectors (to justify withholding of their rent); AND THAT THE CURRENT BUILDING SUPERINTENDANT OF 444 EAST 82ND STREET IS AND HAS BEEN FULLY AWARE OF THIS BOGUS, PAINTED-SURFACE ALLEGED " LEAK " CREATION BY THE 35B TENANTS TO EFFECTIVELY USE, FRAUDULENTLY, THE POWER OF THE U.S. GOVERNMENT TO PRESS THE FEIL ORGANIZATION FOR:  RENT CONCESSIONS; DISCO-FLOOR MAINTENANCE; PERPETUAL NON-ENFORCEMENT OF THE 35B 90% FLOOR COVERAGE/PROPERLY CARPETED LEASE REQUIREMENT (SEE THE ATTACHED LETTER COPY OF THE FEIL GROUP'S LAWYER NILES WELIKSON); TOLERATION OF THE

2

OF THE 35B TENANTS' UNLAWFUL, CONTINUING INCESSANT BEDLAM PRODUCTION; TOLERATION OF CARL LIEBERMAN'S DOPE SMOKING ON THE ROOF AND IN THE FIRE-STAIRWELLS OF A FEDERALLY MORTGAGED PROPERTY; AND EFFECTIVE ENCOURAGEMENT OF THE 35B TENANTS BELLIGERANT HARASSMENT OF MS. SWISKEY AND ME.

Because this is an urgent, life-threatening matter, Ms. Swiskey and I would greatly appreciate hearing from you as soon as possible.

Without prejudice; all rights are reserved, without exception, reservation or qualification and no waivers, constructive or otherwise, have, are or will be granted by me or Ms. Jacqueline Swiskey.

ATTACHMENTS:  AS INDICATED ABOVE.

Sincerely,

DAVID GORDON
212 628-6051

3

28.  ALBERT MERGET'S SEPTEMBER 18, 1997 NEW YORK
STATE SUPREME COURT VERIFIED COMPLAINT

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------X

ALBERT MERGET,                                  Index no. 97117214

Plaintiff,

VERIFIED COMPLAINT

-against-

BROADWALL MANAGEMENT CORP.
a/a/f CLERMONT YORK ASSOCIATES,
JEFFREY FEIL, and ABRAHAM RILL,

Defendants.
-----------------------------------------------------X

Plaintiff, by his attorney, MICHAEL R. BRESSLER, ESQ., complaining of the

Defendant, alleges the following:

1.      Plaintiff resides at 444 East 82nd Street, apartment 7K, New York, NY

10028.  He is a tenant of the Defendant.

2.      Upon information and belief, Defendant CLERMONT YORK

ASSOCIATES is a partnership organized under the laws of the State of New York.  It

has a place of business at 7 Penn Plaza, Suite 618, New York, NY 10001.  It is the

owner of 444 East 82nd Street, New York, NY 10028.

3.      Defendant BROADWALL MANAGEMENT CORP. is the managing agent

for Defendant Clermont York Associates, charged with managing 444 East 82nd Street.

Upon information and belief, Broadwall is a domestic corporation having a place of

business at 7 Penn Plaza, Suite 618, New York, NY 10001.

4.      Defendant JEFFREY FEIL is a partner in Clermont York Associates.

5.      Defendant ABRAHAM RILL is an employee of Broadwall Management

23

Corp. and property manager of 444 East 82nd Street, New York, NY 10028.

## AS AND FOR A FIRST CAUSE OF ACTION

6      Plaintiff has been a tenant of Defendants at 444 East 82nd Street, apt. 7K, New York, NY continuously since October 1, 1990.  On June 3, 1996, Plaintiff and Carolyn Merget, executed a two-year renewal lease commencing October 1, 1996 and ending September 30, 1998.

7      Since she moved in in October, 1994, Mr. Merget's upstairs neighbor in apartment 8K, has continuously made loud banging noises on the floor above his ceiling.  As a result of this banging, Mr. Merget has been denied his right to quiet enjoyment and his warranty of habitability.  On other occasions, this tenant has made harassing phone calls to Plaintiff, and has sent men threatening to kill Mr. Merget.

8.      Mr. Merget has complained to Defendants repeatedly for the past three years by phone and mail.  He further has contacted local officials about this problem and filed complaints with the New York City Police Department, the State of New York Division of Housing and Community Renewal, and the City of New York Division of Housing Preservation and Development.  To date, no action has been taken by defendant to resolve this problem and restore his premises to habitable condition.

9.      As a result of this violation of Mr. Merget's warranty of habitability, he is entitled to return of $19,729.80, representing rent paid from October, 1994 to date. That is, $12,980.16 for rental from October, 1994 through September, 1996 ($540.84 per month for twenty-four months) and $6,749.64 for rental from October, 1996 until September, 1997.

10.      As Defendants' conduct in not making any effort for the past three years in correcting this violation has been willful, Plaintiff is further entitled to punitive damages

24

of $2,000,000.

## AS AND FOR A SECOND CAUSE OF ACTION

11.    Plaintiff repeats paragraphs 1 through 10.

12.    Plaintiff has an African American friend named Maurice Patterson of 311 East 60th Street, New York, NY 10022.

13.    Since May, 1997, Mr. Patterson has attempted on several occasions to visit Plaintiff. The Superintendent at the building has stopped Mr. Patterson from entering the apartment, while white visitors are routinely permitted to visit tenants. Further, Defendants have told Plaintiff he may not be visited by Mr. Patterson.

14.    This conduct violates Plaintiff's right to use and occupancy of his apartment, free from discrimination on the basis of race.

15.    As a result of this conduct, Plaintiff has sustained damage in the amount of $1,000,000.

## AS AND FOR A THIRD CAUSE OF ACTION

16.    Plaintiff repeats paragraphs 1 through 15.

17.    In response to complaints by Plaintiff and his friend, Mr. Patterson, about the noise coming from apartment 8K, Defendants discouraged Mr. Patterson from visiting.

18.    Defendants brought a holdover action in New York County Housing Court, under index number 85892/97 alleging Mr. Patterson is subletting his apartment from Plaintiff. Plaintiff was served with a Notice of Petition and Petition in the action in early July, 1997.

19.    This action was taken despite the fact that Mr. Patterson has written

letters to the Defendants categorically denying he is a tenant. Defendants are aware, and were at the time the Housing Court action was commenced, that Mr. Patterson is a friend of Plaintiff and that Plaintiff never subletted his apartment to him.

20.    Plaintiff was petitioned to Housing Court on July 18, 1997. He was kept waiting by Defendants' attorney until 4:00 pm. He was then told that Defendants' attorney was "not prepared" and the case was dismissed.

21.    Defendants' use of the Housing Court was willful and malicious and designed to stop Plaintiff and his friend from complaining about its conduct or to make Plaintiff leave the premises.

22.    As a result of this abuse of process by Defendant, Plaintiff was damaged for $1,000,000.

## AS AND FOR A FOURTH CAUSE OF ACTION

23.    Plaintiff repeats paragraphs 1 through 22.

24.    Plaintiff was instrumental in fighting Defendants' petition for a major capital improvement increase under 9 NYCRR § 2202.4. The petition had been found to be defective and was rejected by the district rent administrator for New York City.

25.    Defendants' harassment of Plaintiff through legal action and otherwise, described above, came in retaliation for Plaintiff's efforts to fight the rent increase and to secure his rights under RPL § 235-b and his lease. Defendants are subject to civil action for damages pursuant to RPL § 223-b(3).

26.    Defendants' retaliation caused Plaintiff to be damaged for $1,000,000.

## AS AND FOR A FIFTH CAUSE OF ACTION

27.    Plaintiff repeats paragraphs 1 through 26.

28.    The above paragraphs detail Defendant's malicious course of conduct

intended to cause Plaintiff to suffer mental and emotional distress, tension and anxiety in order to illegally and prematurely remove him from his leased premises and/or in retaliation for Plaintiff asserting his rights under the law.

29.    As a result of Defendant's conduct, Plaintiff has become tense, nervous, irritable, suffered great mental anguish, anxiety, loss of sleep, and other psychological and physical injury.

30.    Consequentially, plaintiff has been damaged in the amount of $5,000,000.

WHEREFORE, Plaintiff requests that this Court grant him a judgment as follows: For the first cause of action: $19,729.80, plus punitive damages of $2,000,000 as well an order enjoining Plaintiff's upstairs neighbor from continuing her disturbance of plaintiff; For the second cause of action: $1,000,000 as well as an order enjoining Defendant from preventing Plaintiff's friend's visits without disruption; For the third cause of action: $1,000,000; For the fifth cause of action: $1,000,000; For the fifth cause of action: $5,000,000. In addition Plaintiff requests that this Court grant him costs, disbursements and reasonable attorney's fees incurred in connection with this matter.

Dated: New York, NY
         September 18, 1997


                                        Yours, etc.


                                        MICHAEL R. BRESSLER, ESQ.
                                        Attorney for Plaintiff
                                        67 Wall Street, Suite 2411


29.    THE FEIL ORGANIZATION DEFENDANTS were asked by HUD to respond directly to Plaintiff David Gordon but did not. Instead, THE FEIL ORGANIZATION DEFENDANTS had

Defendants Niles Welikson and Horing Welikson & Rosen, P.C. mail, on April 24, 2001, one of

their trademark letters that did not ACTUALLY respond at all to anything, other than to say " the

complaining tenant's correspondence speaks for itself and requires no further commentary." But it

did, specifically, in another indisputable piece of outright mail fraud, state, concerning previous

litigation (in New York State Supreme Court involving the Lieberman Defendants and their 35B

apartment) " our client was not involved in any such litigation." This outright lie was clearly mail

fraud, because THE FEIL ORGANIZATION Defendants knew one of their former very high

ranking executives, Herb Graff, had been a named defendant for fraud and extortion (along with

Carl and Nancy Lieberman) in the early nineties Welikson referenced litigation. Clearly, THE

FEIL ORGANIZATION DEFENDANTS have engaged in a pattern of extortionate and fraudulent

behavior (and have repeatedly been sued for it). They and their behavior are obviously subject to

the RICO statutue.

30.    Among the actions, activities and behavior of the Defendants new torture campaign

commenced in late April 2003 during which Defendant Carl Lieberman again repeatedly

threatened to kill Plaintiffs, were:  sudden, repeated, intentional, without-warning floodings, with

pressurized water hoses, of Plaintiffs' 34B apartment on April 21, 2003 and April 28, 2003

(despite repeated, ignored demands by Plaintiffs to FEIL ORGANIZATION Defendants –

including Brian Palumbo, Andrew Rattner, Abe Rill and Tony Ruiz – to stop their men

perpetrating the flooding); countless, repeated interminable episodes of intentional, repeated

stomping on the bare wood floors in Apartment 35B by both doped-up-on-illegal-narcotics Carl

Lieberman, and his teenage son Brett (in whom Defendants Carl and Nancy Lieberman had

inculcated a " hate " state of mind with regard to Plaintiffs; longer and longer episodes of

basketball dribbling on the uncarpeted, 35B bare wood disco floors (which THE FEIL

ORGANIZATION kept sanding, sealing and polishing for the Lieberman Defendants, thereby

further incentivizing them); FEIL ORGANIZATION Defendants instructions to 444 East 82nd

Street doormen (who admitted receiving such instructions and which Defendant Brian Palumbo

would not deny having issued) to thwart New York City Police officers responding to Plaintiff's

calls for help by phoning up the Lieberman Defendants just after Police officers had headed for an

elevator to the 35B Lieberman Defendants' apartment.    Thereby preventing the Police from

catching the Lieberman Defendants stomping and bouncing basketballs on their bare wood floors

(on the night of May 28, 2003, for instance, Plaintiffs had to literally go down to the lobby and

wait for Police to arrive in order to tell them what the doormen had been told to do by Defendant

Tony Ruiz; who obviously also had told his doormen to tell the Police Officers he was out of the

building when the Police asked for him, such as on May 28, 2003); bare wood floor stomping and

basketball bouncing in relays by Carl and Brett Lieberman, apparently until they were both

exhausted; intentional early morning, repeated dropping of keys on bare wood floors by Defendant

Nancy Lieberman coupled with intentional strutting in high heel shoes on the same floor (over

Plaintiffs' bedroom ceiling) to wake Plaintiffs; verbal assaulting of Plaintiff Jacqueline Swiskey

by Nancy and Carl Lieberman whenever the two Lieberman Defendants found themselves alone in

elevator cars or the small, enclosed, isolated basement elevator entrance room with Plaintiff

Jacqueline Swiskey (Nancy Lieberman yelling, repeatedly in front of her young son Brett " Witch,

Witch, Witch," while Defendant Carl Lieberman would thrust his face menancingly a few inches

in front of Plaintiff Jacqueline Swiskey, voicing various threats that could only be heard by

Jacqueline Swiskey and the Liebermans because of the absence of other witnesses.    The

Lieberman Defendants, who also kept repeatedly shouting to Plaintiffs, " I hate you," were

obviously trying to maliciously intimidate, harass and frighten the much older Plaintiffs and get

gratification from so doing.    Nancy Lieberman, who apparently loved and got tremendous

malicious gratification out of yelling at Plaintiff Jacqueline Swiskey " Witch, Witch, Witch " in

public places like elevators, even repeated this Lieberman Defendants' harassment terror campaign slogan on the afternoon of Saturday, August 14, 2004, in front of Plaintiff David Gordon (who she was also obviously trying to harass and provoke) <u>in the lobby</u> of 444 East 82nd Street while apparently revisiting THE FEIL ORGANIZATION property.   <u>THE FEIL ORGANIZATION defendants were well aware of the actions, activities and behavior of the Lieberman Defendants but ACTUALLY did nothing meaningful to stop them, and ACTUALLY thereby incentivized them.   To say nothing of giving them free rent and maintaining their 35B, uncarpeted, bare wood floors in disco condition.</u>   And by mail, wire and other fraud attempting to ACTUALLY conceal their real, unlawful intentions, which included harassing and driving Plaintiffs out of their very desirable, rent stabilized 34B apartment and permanently avoid paying Plaintiffs for any damages and other liability.

31.    As a result of the foregoing Plaintiffs demand damages of Two Hundred Million ($200,000,000), before such tripling as the law may allow.

### AS AND FOR A FOURTH CAUSE OF ACTION

32.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs inclusive, as if more fully set forth herein.

33.    As a result of Defendants' wanton, willful and malicious behavior set forth in the Third cause of action, Plaintiffs are entitled to punitive damages in the amount of Six Hundred Million Dollars ($600,000,000).

### AS AND FOR A FIFTH COURSE OF ACTION

34.    <u>THE FEIL ORGANIZATION Defendants</u>, despite being fully aware the interior of Plaintiffs' 34B apartment did not have any apparent vermin e.g. cockroaches or mice (because Plaintiffs had insisted years before that the accessible pipe apertures in the walls be sealed and Plaintiffs never had any pets – but many 444 East 82nd Street building tenants had – and are by

nature very clean people) intentionally, falsely and repeatedly told the violent, hostile, dangerous, drug-smoking Defendant Carl Lieberman, who they were already incentivizing to harass Plaintiffs, that, when the building had an outbreak of mice in various apartments and other areas, the source was Plaintiffs' 34B apartment; which they knew was outrageously false. But the malicious, slanderous telling of this repeated, outright lie caused the violent Carl Lieberman to repeatedly interrupt his weight lifting and dope smoking to run down the stairwell from the 35th floor to the 34th floor and start banging on the door to Plaintiffs' 34B apartment, screaming: " I've got mice; clean up your apartment " (which Plaintiffs, though terrified, did not answer or open their apartment door, knowing Carl Lieberman was violent and dangerous). Plaintiffs did not have any mice and THE FEIL ORGANIZATION ultimately posted announcements in the elevator and elsewhere detailing their efforts at dealing with the problem (which undoubtedly was related to both poor management and maintenance practices and allowing of pets and many irresponsible pet owners as tenants (the building's elevators and lobby have, in the last dozen years or so, become increasingly full of animal feces and urine).

35.    THE FEIL ORGANIZATION Defendants knew said slanderous lie about the source of the building's mice problem was false and that Carl Lieberman was violent, dangerous and would undoubtedly attack Plaintiffs (who they knew were respectively elderly, and elderly and disabled) and would harass and terrify Plaintiffs. Which was exactly what happened and what the Feil Organization Defendants intended. THE FEIL ORGANIZATION Defendants repeated the above-referenced type campaign of vicious, malicious lying to Plaintiffs' neighbors about Plaintiffs starting in the second half of 1995. This time blaming widespread, very serious leaking in their 444 East 82nd building, after they had turned on the building's central air conditioning and apparently lost control of the system, on Plaintiff David Gordon. Falsely, intentionally and maliciously telling lower floor tenants specific flooding of their apartments was coming from

31

Plaintiffs' 34B apartment (which was totally false and impossible), and that the reason was David

Gordon had refused to allow repair workers into 34B (which was not only false, because

Defendant Carlos Guervara had already fully inspected for leakage in Plaintiffs' apartment and

already established absolutely that what Defendant Tony Ruiz was maliciously, repeatedly telling

tenants on floors below Plaintiffs' 34th floor apartment about David Gordon was intentionally

false. When Plaintiffs then told vicious Defendant Abe Rill to bring in an actually licensed,

competent plumber to stop specific, unrelated leaks in Plaintiffs' apartment, he sent up, twice, an

incompetent, unlicensed alleged " plumber," who actually repaired nothing, and finally admitted:

he was not a licensed plumber; THE FEIL ORGANIZATION Defendants actually knew they had

lost control of the building's air conditioning system; and had also refused to bring in professional

" pipe wrapping " plumbers to prevent serious condensation (Defendants Abe Rill and Tony Ruiz,

in 2006, again sent the same incompetent, unlicensed alleged plumber back into Plaintiffs'

apartment to sabotage Plaintiffs' bathroom sinks). Defendant Tony Ruiz continued his specific

lying to tenants in apartments below Plaintiffs about the actual source of their air conditioning

leaks. Which repeated, malicious lying campaign was, like the Feil Organization Defendants's

previous lying to the violent, doped-up Carl Lieberman Defendant, intended to similarly incite

them into harassing Plaintiffs. Which they did with repeated notes, door pounding and telephone

calls, even after they were told, carefully and politely, they were being lied to and why. But The

Feil Organization Defendants had already falsely and maliciously incited them to make David

Gordon the scapegoat for the Feil Defendants air conditioning system incompetence and

negligence. Such fraudulent scapegoating and no-access claiming is ongoing.

36.     As a result of the foregoing Plaintiffs demand damages of Two Hundred Million Dollars

($200,000,000), before such tripling as the law may allow or require.

### AS AND FOR A SIXTH CAUSE OF ACTION

37.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs

inclusive, as if more fully set forth herein.

38.    As a result of Defendants' wanton, willful and malicious behavior set forth in the Fifth

cause of action, Plaintiffs are entitled to punitive damages in the amount of Six Hundred Million

Dollars ($600,000,000).

### AS AND FOR A SEVENTH CAUSE OF ACTION

39.    During the second half of 2005, THE FEIL ORGANIZATION DEFENDANTS mailed yet

another extraordinarily fraudulent, wildly unlawful set of papers to Plaintiff David Gordon, signed

personally by Defendant Jeffrey Feil, and emanating from both THE FEIL ORGANIZATION'S

New York City address and Niles Welikson's and Horing Welikson & Rosen, P.C.'s Long Island

address attempting to, among other things, unlawfully manufacture an eviction pretext scam.

After disabled, Vietnam War Veteran Plaintiff David Gordon managed to get to the distant Gracie

Post Office in Manhattan, and personally claimed the certified envelope containing the wildly

unlawful, grossly fraudulent papers THE FEIL ORGANIZATION Defendant had set him up to

NOT actually receive (thereby surprising THE FEIL ORGANIZATION Defendants), Defendant

Brian Palumbo, on the telephone, quickly admitted the papers were a fraudulent scam and THE

FEIL ORGANIZATION Defendants had not actually wanted Plaintiff to actually respond and

appear in a Court. This temporarily thwarted, abuse of process scheme is virtually identical to the

abuse of process scheme detailed in the 1997 New York Verified Complaint of Albert Merget,

reprinted in its entirety above. And is clearly part of THE FEIL ORGANIZATION'S pattern of

Racketeering Behavior. But the venal, malicious FEIL ORGANIZATION Defendants were not

content to have partly failed in their bogus, summary eviction papers scheme (which was also

obviously intended to interfere with Plaintiff David Gordon's attempt to have Plaintiff's 1995,

apartment insurance carrier comply with a New York City Civil Court discovery Order Judge Shlomo Hagler had just issued; which would compel that defendant insurance company to reveal its unlawfully concealed agreement with THE FEIL ORGANIZATION Defendants to totally deny Plaintiffs any insurance benefits for damages resulting from a huge 1995 flooding of Plaintiffs' 34B apartment from a burst pipe (not a penny of compensation for which has ever been paid or offered by anyone to this day). The Feil Defendants have engaged, since 1997, in an ongoing, continuous inducement of contractual breach arrangement – and concealment thereof – with Plaintiff David Gordon's 1995 tenant's insurance carrier. Which arrangement Defendant Brian Palumbo acknowledged. And shortly after Plaintiff David Gordon asked Judge Hagler to enforce his still uncomplied with Order – to expose THE FEIL ORGANIZATION'S unlawful behavior against Plaintiffs in that 1995 flood insurance matter – THE FEIL ORGANIZATION then began to also harass Plaintiffs by repeatedly withholding monthly rent bills for Apartment 34B. This harassment, like the abuse of process and incentivized bedlam creation described above, was also intended to interfere with Plaintiff's insurance contract recovery rights efforts and was also wildly unlawful. That harassment was followed by: the Feil Defendants holding and refusing to deposit, Plaintiff's monthly rent checks (until Plaintiff David Gordon threatened to go to New York's Attorney General); and continued, ongoing to this day, refusal to both pay for any Plaintiff damages from an October 19, 2005 gigantic building flood and ongoing to this day refusal to repair the building's defective exterior south facade masonry (which caused the still unrepaired concrete floor cistern over Plaintiff's living room ceiling to heavily leak again yet more water into Plaintiffs' apartment on Sunday, May 20, 2007).

40.     Directly related to both Niles Welikson's extraordinarily false, fraudulent and malicious scam letter (reprinted at paragraph 18. above) and The Feil Defendants engagement, since 1997, in an ongoing, continuous inducement of contractual breach arrangement – and concealment thereof

with Plaintiff David Gordon's 1995 tenant's insurance carrier, which arrangement Defendant Brian Palumbo acknowledged, is THE FEIL ORGANIZATION incentivized harassment noise generation emanating from other apartment tenants referenced above in paragraph 12. Such as, but not limited to, Defendant Bernard J. Goz (who apparently has recently defrauded Chase Manhattan Bank or otherwise unlawfully taken some $79,000) and Defendant Bella Goz (a foreign-speaking cult freak of some sort (that Bernard J. Goz repeatedly yells at " But this is the United States "), whose single bedroom, 34C Apartment is contiguous and directly on the north side of Plaintiffs' north bedroom, north wall, upon which these Goz Defendants (who may be family related to one or more of the named individual Feil Organization Defendants, apart and aside from Nicole L. Goz) constantly, to this day, intentionally, maliciously bang and slam, with the clear intention of depriving Plaintiffs of sleep. More than 80 percent of the above-referenced, almost 90 police calls were because the Goz couple, despite having, during two different telephone calls, falsely and fraudulently promised to " stop " their banging and slamming, have not. THE FEIL ORGANIZATION, (fully aware the Goz Defendants have operated from their 34C Apartment an enterprise called Computer Construction Corporation, which the Feils are effectively subsidizing) apparently not only promised them Plaintiffs' larger, two bedroom 34B Apartment, if they assist THE FEIL ORGANIZATION torture of Plaintiffs (which the Goz Defendants couple seems consistently eager to do), but has clearly, repeatedly utilized its fully informed Defendant Brian Palumbo and Defendant cohorts, New Jersey-based Defendant lawyers Stanley Kallmann, Brian J. Bolan, their Parsippany, New Jersey insurance company defense litigation group Genet Kallmann Antin & Robinson, P.C., and the gigantic, publicly owned, American International Group of insurance companies – a Feil Organization insurer – and Atlantic Mutual Insurance Company (Plaintiff David Gordon's 1995 tenants policy insurance company that entered into the concealed, unlawful agreement with American International Group discussed

35

above to unlawfully deny David Gordon any insurance benefits under his expensive, 1995

Replacement Cost Insurance Policy, after the Feils flooded his Apartment 34B in January 1995),

and the 34C Apartment Goz couple to specifically deprive David Gordon of sleep during calendar

periods directly related to David Gordon's many New York Civil Court appearances for motions

and other activities (obviously to prevent David Gordon from prevailing in his 1997-filed lawsuit

to recover 1995 flood damages from his insurer, Defendant Atlantic Mutual Insurance Company;

which had quickly allied itself with THE FEIL ORGANIZATION and its insurer American

International Group; who would have to pay Atlantic Mutual Insurance Company some or all of

any money paid to David Gordon – not a penny of which has ever been offered or paid to this day,

despite litigation since 1997).    All the Goz Defendants, as well as Defendants American

International Group, Atlantic Mutual Insurance Company, and their lawyers Stanley Kallmann,

Brian J. Bolan and Gennet Kallmann Antin & Robinson, have wantonly, willfully and maliciously

joined THE FEIL ORGANIZATION Defendants in their ongoing torture campaign of Plaintiffs

and have repeatedly, tortiously, interfered with Plaintiffs' lease contract and other rights, for both

their own individual benefits and to benefit each other.  They, like all the named Defendants in

this action, are subject to the liabilities and penalties for their unlawful behavior, including

deceptive acts (which behavior is not limited to misleading statements or omissions; deceptive acts

relate to all conduct that is deceptive or manipulative).  Including particularly the wire and mail

activity involving the two huge Defendant insurance companies named in this Amended

Complaint and their New Jersey lawyers also named as Defendants in this Amended Complaint.

Indeed, immediately upon learning THE FEIL ORGNIZATION'S false and fraudulent so-called "

holdover " action in New York City Housing Court against David Gordon (discussed in detail

below) was being removed to this Federal Court in connection with this 07 CV 6624 (PKC) case

(filed July 23, 2007), Defendant Brian Palumbo obviously quickly contacted Defendants

Stanley Kallmann, Brian J. Bolan and Gennet Kallmann Antin & Robinson (and thereby Defendants American International Group and Atlantic Mutual Insurance Company), told them at least he received by certified mail (attached to David Gordon's initial, August 8, 2007 Removal Notice) a copy of the first page of Plaintiffs' original July 23, 2007-filed Complaint in this Federal action (which had not named those particular Defendants but made Palumbo the first-named Defendant) resulting in those now named Defendants, on August 13, 2007, United States postal mailing to David Gordon a copy of A CONCEALMENT FRAUD AFFIRMATION, signed by Brian J. Bolan, sent to New York State Supreme Court's First Department, Appellate Term, fraudulently concealing, among other things, that the totally unnecessary Motion Bolan's CONCEALMENT FRAUD AFFIRMATION was supporting (to extinguish " with prejudice " David Gordon's appeal of a wildly improper March 26, 2007-dated Decision and Order in David Gordon's above-referenced 1997-filed New York court flood insurance case against Atlantic Mutual Insurance Company) (by a New York City Civil Court judge whose license to practice law had been lifted in 1997) was ACTUALLY mailed (like the Feil Defendants' above-detailed July 25, 2007-dated false and fraudulent " holdover " Housing Court action) to harass David Gordon and interfere with and thwart this instant 07 CV 6624 Federal action.  This August 13, 2007-dated and mailed CONCEALMENT FRAUD AFFIRMATION, actually from the two Defendant insurance companies and their three, New Jersey-based Defendant lawyers, signed by Defendant Brian J. Bolan, is so fraudulent, wanton, willful and malicious that Bolan did not sign the 22 NYCRR 130-1.1-a Rule legend on his Motion papers jacket, which signature New York State's Uniform Court Rule 130 requires of all attorneys admitted to practice in New York's courts.  Obviously because he knows that if he " certifies," as the legend requires, that his Affirmation is " not frivolous " he could be heavily sanctioned, but if the Appellate Term does not ignore his missing signature over his typed name and August 13, 2007 date on his jacket he may,

also at David Gordon's expense, frivolously claim not signing was a mistake, or withdraw his Motion. It is also obvious both the Feil Defendants and the two insurance companies and their New Jersey based lawyer Defendants are also desperate to prevent this Federal Court from compelling disclosure of the fraudulent concealed agreement between them, because the Feils' unlawful behavior following the January 1995 flood resulted in, among other things, Plaintiff David Gordon being severely damaged, including toxically poisoned. THE FEIL ORGANIZATION for years now, in addition to all the other reasons alleged in this Amended Complaint, has obviously engaged in its torture campaign and associated behavior to materially assist the two cognizant Defendant insurance companies, American International Group, and Atlantic Mutual Insurance Company, and their three Parsippany, New Jersey named Defendant litigators, for obvious monetary benefit. As have those five Defendants.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

41.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs inclusive, as if more fully set forth herein.

42.    As a result of Defendants' wanton, willful and malicious behavior set forth in the Seventh cause of action, Plaintiffs are entitled to punitive damages in the amount of Six Hundred Million Dollars ($600,000,000).

43.    When Plaintiffs continued not to vacate the premises, after the Feil Defendants continued both their ongoing refusal to pay for any of the damages they had previously caused and their ongoing refusal to properly, actually make necessary repairs, the Feil Defendants then dumped yet more waste water onto their roof-top machine room floor, knowing it would leak into Plaintiffs' apartment with the toxic wastes it accumulated going through concrete and other material, and through cavities loaded with mold, dead vermin, vermin feces and other toxic materials. The Feil Defendants knew Plaintiffs were elderly and elderly and disabled and would both be sickened by

the toxins entering the apartment, which they were.  And, on Saturday, May 26, 2007 they intentionally dumped yet more waste water again onto the machine room floor, further flooding Plaintiffs' apartment.  The Feil Defendants also knew that their continued overhead floods and other leaking of toxin laden water into Plaintiffs' apartment had destroyed Plaintiffs' expensive, custom made, lined, sun-block curtains and that by refusing to properly service and maintain the large, special, building-owned venetian blinds, which are the only remaining, partial protection from intense sunlight, glare and heat, Plaintiffs' unprotected property would be damaged and Plaintiffs would have to wear sunglasses in the apartment on sunny days to prevent very serious eye damage.  Plaintiffs' property was in fact damaged by excessive ultraviolet light and Plaintiffs had to purchase and wear expensive, very dark, prescription sun glasses.  After, on April 17, 2007, to perpetrate a fraud on a DHCR Inspector, the Feil Defendants removed one venetian blind, allegedly for repair, promising to return it within a few days.  They never fixed or returned it to this day despite repeated verbal and certified mail demands.  And instructed their handymen to lie to Plaintiffs about it.  Feil Defendants also stole and tampered with Plaintiffs' U.S. mail.

44.    On July 9, 2007 (after receiving duplicate copies of a July 2, 2007 certified letter Plaintiff David Gordon sent to New York State's Division of Housing And Community Renewal and THE FEIL ORGANIZATION Defendants at both their Manhattan headquarters and Niles Welikson's office address protesting both the renewal of their previous rent bill withholding harassment, now for July 2007, and their mailing from Defendant Welikson's office a totally false, fraudulent June 18, 2007-dated letter yet again falsely claiming David Gordon had denied access) Defendants Jeffrey Feil and Niles Welikson mailed David Gordon a July 9, 2007-dated fraudulent dispossess letter titled " TEN DAYS NOTICE OF TERMINATION " predicated on an attached copy of their above-referenced June 18, 2007-dated totally false, fraudulent access denial letter.  This July 9, 2007 dispossess notice was obviously mailed to set Plaintiffs up for an abusive eviction action in a

39

New York Housing Court and, by the mere filing of such an action in that Court (which sells its eviction data to prospective tenant screening bureaus) to irreparably harm Plaintiffs permanently by, among other effects, causing them to be blacklisted by other landlords nationwide. Thereby denying Plaintiffs equal housing opportunities. This malicious, fraudulent set of mailings was initiated and perpetrated after Defendant Brian Palumbo had, on May 11, 2007, telephoned Plaintiff David Gordon to fraudulently dissuade both Plaintiffs from going to the Police after a 444 East 82nd Street garage attendant informed Plaintiffs Defendant Tony Ruiz and Feil " management " had <u>again</u> attacked their automobile in the building's garage, using Defendant contractor Alan Rosenbloom's employees. Avoiding thereby an encounter with Police, Defendant Tony Ruiz subsequently began menacing Plaintiffs with an apparently vicious pitbull he had acquired. Plaintiffs did not learn (and Palumbo continued to conceal) the " management " referred to by the garage attendant included Defendant Nicole L. Goz, who THE FEIL ORGANIZATION had then newly positioned in an office at their 444 East 82nd Street building, until well after Nicole L. Goz had appeared at Plaintiffs' 34B Apartment with Alan Rosenbloom and his employee Tim Murnane, on July 31, 2007, for the " survey " visit illuminated immediately below. During which " survey " visit she and Tim Murnane were clearly taking explicit orders from Defendant Alan Rosenbloom.

45.     Plaintiffs are informed and believe, and on that basis allege, the Feil Defendants behavior was also because of Plaintiffs' familial status, age and disability. The Feil Defendants clearly expected to successfully force Plaintiffs to abandon their leasehold. <u>INDEED, THE FEIL ORGANIZATION 7 Penn Plaza headquarters Defendants, including Jeffrey Feil and his executives, ON AUGUST 1, 2007, ONE DAY AFTER,</u> on July 31, 2007, Defendant Nicole L. Goz (THE FEIL ORGANIZATION 44 East 82nd Street " Building Management " employee – some of whose other unlawful activity is alleged above), along with Rosenbloom's top, on-site

40

new windows installation crew superviser, Tim Murnane, <u>were</u> not <u>only</u> <u>given</u> <u>access</u> <u>to</u> <u>Plaintiffs'</u>

<u>34B Apartment</u> to survey the Apartment and its leaking malfunctioning, unrepaired windows, but

a long, courteous tour, partial Apartment 34B damage exposition, and explanation of exactly how,

where and why THE FEIL ORGANIZATION was repeatedly flooding Plaintiffs' 34B Apartment

and the obviously necessary, new window installation-related remedies – <u>HAD NILES</u>

<u>WELIKSON United States mail to Plaintiff David Gordon a July 25, 2007-dated, false and</u>

<u>fraudulent Notice Of Petition and Petition for</u> eviction, thereby commencing a totally fraudulent,

obviously retaliatory, <u>so-called " holdover " action in New York City Housing Court (the</u> <u>exact</u>

<u>same</u> <u>type</u> " <u>holdover</u> " <u>action</u> <u>they</u> <u>had</u> <u>used</u> <u>to</u> <u>torture</u> <u>former</u> <u>tenant</u> <u>Albert Merget);</u> now falsely

and fraudulently claiming David Gordon had " denied access " for the survey visit by Alan

Rosenbloom, Nicole L. Goz and Tim Murnane (which survey visit Rosenbloom had finally

confirmed by July 24, 2007-dated United States mail at David Gordon's request, <u>AFTER</u>

previously standing Plaintiffs up on  July 6, 2007; a July 6, 2007 non-appearance appointment

Rosenbloom had also <u>claimed</u> – during what is now obvious was a July 12, 2007 telephone

conversation wire fraud scam in concert with Niles Welikson and THE FEIL ORGANIZATION

Defendants – <u>he had conveyed by E-Mail to Defendant Abe Rill</u> (it is now clear Rosenbloom had

<u>also</u> lied to David Gordon during a May 29, 2007 telephone conversation about his relationship to

Defendant Brian Palumbo, <u>and</u> continued to conceal he and his employees had attacked Plaintiffs'

automobile with Feil Organization Defendants Tony Ruiz and Nicole L. Goz.  The original

Complaint in this instant United States District Court For The Southern District of New York

action, which THE FEIL ORGANIZATION Defendants and Defendants Niles Welikson, Horing,

Welikson & Rosen, P.C. and Alan Rosenbloom had been told was coming, was filed on July 23,

2007, and Plaintiff David Gordon, pursuant to Federal Law, on August 16, 2007, REMOVED the

above-referenced, outrageously false and fraudulent July 25, 2007-dated so-called " holdover "

action by THE FEIL ORGANIZATION (doing business as Clermont York Associates) from New York City Housing Court by filing a Federal Notice of Removal stating, among other things, the removed action is " directly related " to this instant 07 CV 6624 case, " appears to be in response, frivolous, bad faith, intended to harass and created to interfere with and thwart 07 CV 6624 and should be referred directly to the Federal Judge handling 07 CV 6624. For consideration, voiding, and sanctions pursuant to Federal Rule 11 " (The August 15, 2007-dated Notice Of Removal and its attachments filed August 16, 2007, is included herein and made a part hereof by reference).

46.    The behavior, actions and violations of the Feil Defendants constitute a breach of covenant of quiet enjoyment owed to Plaintiffs. And breach a duty to perform in good faith.

47.    The behavior, actions and activity of Defendants constitute a breach of warranty of habitability and constructive eviction and wrongful eviction.

48.    Defendants violated the Fair Housing Act, 42 U.S.C. § 3601, et seq, and regulations pursuant to such Act, 24 C.F.R. § 100, by but not limited to: coercing, intimidating, threatening or interfering with Plaintiffs in the exercise or enjoyment of, or on account of their having aided or encouraged other persons in the exercise or enjoyment of, rights granted or protected under the Federal Fair Housing Act, and New York State laws to protect tenants and consumers. Including laws to prevent unfair or deceptive acts or practices affecting the conduct of trade or commerce. Defendants have clearly engaged in acts and practices which are deceptive to Plaintiffs, other individuals and government agencies including: other 444 East 82nd Street, New York, New York building tenants, the New York City Police, the Federal Housing Administration (FHA) and New York State's Division of Housing and Community Renewal (DHCR). The Welikson and Feil Defendants have engaged in malicious abuse of process.

## SCIENTER

49.    All the named Defendants acted with scienter. Defendant Jeffrey Feil claims to be Chief Executive Officer of The Feil Organization. Defendant Jay Anderson claims to be both the Chief Operating Officer and an Executive Vice President (like Defendant Andrew Rattner) of The Feil Organization. Jay Anderson signed the Lease Renewal forms for Plaintiff David Gordon's lease on Apartment 34B at the Feil's 444 East 82nd Street, New York, New York building, including Plaintiff's current Lease Renewal. Which contract, because of all the foregoing, the Feil Defendants are clearly in breach of. There is no conceivable way either Jay Anderson or Andrew Rattner could be unaware of the above-detailed behavior by all the Defendants, including the vicious junkie Carl Lieberman. The Feil Organization's Website boasts " all our tenants are carefully researched and monitored," and " each Feil Property is monitored on a daily basis by a hands-on administrative, financial and maintenance staff." Andrew Rattner approved, among other acts, actions and behavior, one or more pay-offs to the Lieberman Defendants and Jay Anderson has repeatedly tried, by United States Mail, via a repeated scam, to deceive Plaintiff David Gordon into signing fraudulent Lease Renewal forms which falsely state " that 01 lawful provisions attached." One of Jay Anderson's public biographies states: " He has purchased more than $5 billion of property during his more than 25-year tenure at the Feil Organization." Anderson was also cited for racial discrimination in a suit against The Feil Organization in United States District Court For The Southern District of New York. The Feil Organization's own website description of the Racketeering Enterprise they are clearly operating (which includes a huge photo of their flagship 444 East 82nd Street, New York, New York building referenced in this Complaint) after tauting their " operational expertise to run, maintain and take responsibility for our own properties," includes the following statement, ending in bold face type: " Perhaps our most cherished principle though, is our company's longstanding commitment to consistency.

Consistency that breeds stability.  Stability that manifests itself in rational, deliberate decisions which elevate us above today's real estate fray.  That is power.  **That is the Feil Organization."**

50.    Plaintiffs have suffered and are continuing to suffer great and irreparable loss and injury, including mental anguish, humiliation and embarrassment, as a proximate result of the acts and conduct of the Defendants complained of, and will continue to so suffer unless Defendants are enjoined.

51.    Copies of photographs are attached hereto as Exhibits, including photos of:  Defendant Tony Ruiz assault and battering of Plaintiffs' garaged automobile, and Defendant Carl Lieberman's marijuana butts on the roof of 444 East 82nd Street.

WHEREFORE, Plaintiffs request judgement against the Defendants as follows:

1.  An immediate restraining order and injunction voiding any eviction removal warrant, order or judgement issued or pending against Plaintiffs or either of them, and restraining and enjoining THE FEIL ORGANIZATION Defendants, including their Clermont York Associates and Broadwall Management Corporation entities, and all their attorneys, agents, employees and all those persons acting in concert or participation with them, absolutely prohibiting commencement of any further New York or other court eviction proceeding by any means against Plaintiffs, including but not limited to the filing, electronic or otherwise, and/or mailing of any papers and any other activity that might result in any eviction and/or prospective tenant blacklisting with any landlord anywhere, or any other type adverse consumer report.  And immediately voiding retroactively their July 25, 2007-dated Civil Court Of The City of New York, Housing Part, Index No. 080781/07 Notice of Petition Holdover and its annexed Petition Holdover (including any adverse action and/or order by said Civil Court based on filing of those July 25, 2007-dated and any later dated papers) issued by Defendants Niles Welikson and Horing, Welikson & Rosen or any other person.

And prohibiting the refilling of any such notice and petition by any other attorney acting for Clermont York Associates or THE FEIL ORGANIZATION, including Broadwall Management Corporation (the Index No. 080781/07 Notice and Petition action was removed to this Federal Court by the August 15, 2007 Notice of Removal given case number 07 CV 7331)(PKC); and voiding and extinguishing retroactively the July 9, 2007-dated fraudulent dispossess notice titled " TEN DAYS NOTICE OF TERMINATION," mailed July 9, 2007 to Plaintiff David Gordon and absolutely prohibiting the manufacture, utilization and mailing of any further such fraudulent or otherwise inaccurate dispossess notice and any further false, fraudulent or otherwise inaccurate no-access type notice like, but not limited to the June 18, 2007-dated false, fraudulent no-access notice (titled TEN DAYS NOTICE TO CURE) upon which the above-referenced July 9, 2007-dated fraudulent, scam dispossess notice is based; as well as absolutely prohibiting the manufacture, utilization and mailing of the above-referenced 2006 type of dispossess notice/no access letter scam Defendant Palumbo admitted was fraudulent and any other bogus or fraudulent claims. And prohibiting Defendants Jeffrey Feil, Carole A. Feil and all the other named Feil Organization Defendants, Niles Welikson and his law firm, and Defendant Alan Rosenbloom from depriving Plaintiffs of any repair, service or facility, from harassing, threatening Plaintiffs with eviction and from otherwise harassing or discriminating against Plaintiffs; and ordering THE FEIL ORGANIZATION Defendants to:

- immediately, permanently cease dumping water onto any of the concrete
   floors above Plaintiffs' 34B Apartment, including particularly the roof-top
   machine room floors at 444 East 82nd Street, New York, New York; and

- immediately actually repair permanently both the easily repairable south
   exterior building facade outside of, and the even more easily repairable

cisterned concrete floor in Apartment 35B directly above Plaintiffs' 34B

ceiling; with verified completion in no more than fourteen (14) business

days from the service date of this Amended Complaint on any FEIL

ORGANIZATION Defendant owner or employee; and

- IMMEDIATELY PREPAY DIRECTLY TO PLAINTIFFS (in order to

enable proper permanent repairs and remediation of their Apartment 34B)

ALL OF PLAINTIFFS' RELATED EXPENSES (WHICH ARE

PREREQUISTE NECESSITIES), such as, but not limited to:  temporary

Plaintiff-acceptable hotel, fully furnished and equipped lodging; all

necessary transportation; personal property moving, remediation, repairs,

replacement, storage and removing back to Apartment 34B; insurance,

communications and all other related expenses; for an initial period of at

least six (6) months (the hotel lodging related portion of which alone to be no

less than a total of $600,000.00, based, in part, for instance, on publicly quoted,

current, comparable space rates for a thirty-fourth (34th) floor, two bedroom suite

at luxury, high quality, upper East side Manhattan hotels, located within a reason-

able distance from Plaintiffs' current address, with available indoor parking garage);

and an initial six (6) months total rent abatement, plus total rent abatement for any

subsequent time period required for THE FEIL ORGANIZATION to fully repair,

restore and fully remediate Plaintiffs' 34B Apartment to Plaintiffs' satisfaction;

and instantly refund with interest at New York's statutory rate all rent paid by

David Gordon since the commencement of Defendants' unlawful acts, actions and

behavior referenced in this Plaintiffs' Amended Complaint (including particularly

but not limited to all rent paid since THE FEIL ORGANIZATION Defendants

severely flooded Plaintiffs' 34B Apartment on October 19, 2005); and

- after Plaintiffs have in fact determined, and received by check or cash, the full

totals of all such prepayments amounts for the PREREQUISTE NECESSITIES

EXPENSES SET FORTH ABOVE, and evacuated their movable, non-built-in

property, THE FEIL ORGANIZATION shall immediately commence actually

Repairing, restoring and fully remediating Plaintiffs' 34B Apartment (with all

necessary damage safeguards, and theft protection arrangements in place for

Plaintiff's owned, very expensive:  custom made, mirrored, floor-to-ceiling

height, multiple bifold closet doors; extensive built-ins, custom made, wood,

aluminum and formica covered shelving; track lighting and other lighting

fixtures; ceiling mounted audio speakers and special wiring; drapery tracks;

and other built-ins and wall attachments), including actual replacement of

all wood and other tiled floors after all other work is fully completed

(within a reasonable, Court-ordered, fixed, read-for-occupancy, completion

date deadline); and

- prohibiting all Defendants from otherwise denying Plaintiffs equal housing

opportunities; and requiring Defendants to take any and all steps necessary

to instantly redress violations in the future; and

- prohibiting all Defendants and their attorneys, agents and employees and all

persons in concert or participation with them from destroying, modifying,

altering or concealing any documents and data relating to any of the actions,

activity and behavior referenced in Plaintiffs' Amended Complaint; and

- requiring Jeffrey Feil and Carole A. Feil and all the other Feil Organization

Defendants to immediately take any and all other measures with respect to

Plaintiffs that will put them in the position they should have been in but for

the acts, actions and behavior complained of in their Amended Complaint,

including but not limited to instantly refunding with interest at New

York's statutory rate all rent paid to THE FEIL ORGANIZATION

by David Gordon since January 1, 2001; and

- requiring Jeffrey Feil and Carole A. Feil and all the other named Feil

Organization Defendants and Niles Welikson and Horing Welikson &

Rosen to prepay directly to David Gordon any and all expenses (including

all legal expenses) associated now and in the future, that he may be faced

with or incur to expunge and/or otherwise fully remedy any and all effects

of being unable to actually expunge his name and any associated transmitted

data resulting from their having sued him in New York City Housing Court

on the basis of their June 18, 2007-dated false, fraudulent no-access notice

(titled TEN DAYS NOTICE TO CURE) upon which the above–referenced

July 9, 2007-dated fraudulent, scam notice is based; and

- immediately enjoining all the named Defendants from dividing, pledging,

mortgaging or otherwise encumbering, selling, shifting, transferring title

to, disposing of and otherwise impairing, directly or indirectly, any of their

assets' liquidity without this Court's specific prior written authorization.

2. An injunction prohibiting the Defendants from denying Plaintiffs equal housing

opportunities.  And prohibiting all Defendants and their attorneys, agents and employees and

all those persons in concert or participation with them from destroying, modifying, altering

and concealing any documents and data relating to any of the actions, activity and behavior

referenced in this Complaint.

3. An injunction requiring Defendants to take any and all steps necessary to instantly redress violations in the future.

4. An injunction requiring the Defendants to immediately take any and all measures with respect to Plaintiffs that will put them in the position they would have been in but for the acts, actions and behavior complained of in this Complaint, including actual, permanent repairs to the exterior to the exterior facade outside of, and cisterned overhead concrete floor above Plaintiffs' 34B Apartment ceiling at 444 East 82nd Street, New York, New York.

5. An Order disbarring attorneys Brian Palumbo, Niles Welikson, Jeffrey Feil, Stanley Kallmann and Brian J. Bolan.

6. An Order immediately freezing all the assets of Carl Lieberman, Nancy Lieberman and Brett Lieberman; and immediately freezing all the assets of <u>ALL</u> the other Defendants.

7. An Order against all the Defendants, and all their present and future employees, agents and attorneys, to forever, respectively cease any further interference, directly or indirectly, with Plaintiffs and their property, pay directly to Plaintiffs all damage claims immediately, and refrain from and avoid all abuse of any nature whatsoever.

8. Judgement of Two Hundred Million Dollars ($200,000,000) on the First cause of action.

9. Judgement of Three Hundred Million Dollars ($300,000,000) on the Second cause of action.

10. Judgement of Two Hundred Million Dollars ($200,000,000) on the Third cause of action.

11. Judgement of Six Hundred Million Dollars ($600,000,000) on the Fourth cause of action.

12. Judgement of Two Hundred Million Dollars ($200,000,000) on the Fifth cause of action.

13. Judgement of Six Hundred Million Dollars ($600,000,000) on the Sixth cause of action.

14. Judgement of Two Hundred Million Dollars ($200,000,000) on the Seventh cause of action.

15. Judgement of Six Hundred Million Dollars ($600,000,000) on the Eighth cause of action.

16. Such tripling of the above judgement amounts as the law may allow and/or require; plus

interest; attorneys fees, and all disbursements and costs.

PLAINTIFFS DEMAND A TRIAL BY JURY

DATED:  NEW YORK, NEW YORK
        October 16, 2007

_____
DAVID GORDON
PLAINTIFF
444 EAST 82ND STREET
NEW YORK, NEW YORK  10028

JACQUELINE SWISKEY
PLAINTIFF
444 EAST 82ND STREET
NEW YORK, NEW YORK  10028

Exhibit A

PLAINTIFF JACQUELINE SWISKEY POINTING AT DEFENDANT CARL
LIEBERMAN'S DISCARDED MARIJUANA BUTTS ON THE ROOF OF THE
FEIL DEFENDANTS' 444 EAST 82ND STREET, NEW YORK, NY BUILDING





EXHIBIT PAGE A1

THE REAR WINDSHIELD/HATCHBACK GLASS OF PLAINTIFFS' AUTOMOBILE AFTER
THE FIRST ATTACK UPON IT BY FEIL ORGANIZATION DEFENDANT BUILDING
SUPERINTENDENT TONY RUIZ; AND AFTER THE SECOND ATTACK UPON IT, IN
MAY 2007, WITH TONY RUIZ' OWN RED VAN OCCUPYING PLAINTIFFS' NORMAL
PAID-FOR SPACE, AFTER PLAINTIFFS' AUTOMOBILE WAS VIOLENTLY MOVED
BY DEFENDANTS WITHOUT PERMISSION, WITHOUT KEYS, AND WITHOUT ANYONE
UNLOCKING ITS LOCKED BRAKES; AND WITHOUT UNLOCKING OF ITS ALSO LOCKED
STEERING WHEEL AND LOCKED TRANSMISSION.





EXHIBIT PAGE A2

THE 444 EAST 82ND STREET, NEW YORK, NY FEIL BUILDING GARAGE
CEILING'S VISIBLY LEAKING HOT WATER PIPES OVER THE LOCATION
TO WHICH DEFENDANTS VIOLENTLY MOVED PLAINTIFFS' AUTOMOBILE
WITHOUT PLAINTIFFS' PERMISSION FROM ITS NORMAL PAID-FOR
LOCATION THEN TAKEN FOR DEFENDANT TONY RUIZ RED VAN.



PLAINTIFF JACQUELINE SWISKEY POINTING TO FEIL ORGANIZATION
DEFENDANT TONY RUIZ RED VAN OCCUPYING PLAINTIFFS' NORMAL
PAID-FOR SPACE, WITH THE REAR OF PLAINTIFFS' AUTOMOBILE
VISIBLE, PERPENDICULAR; IN THE LOCATION BEHIND A HUGE WALL
PILLAR PLAINTIFFS' AUTOMOBILE WAS VIOLENTLY MOVED TO BY
DEFENDANTS, UNDER OBVIOUSLY LEAKING HOT WATER PIPES.



EXHIBIT PAGE A3