# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID GORDON and JACQUELINE SWISKEY,

                    Plaintiffs,

vs.

BRIAN PALUMBO, NILES WELIKSON, HORING
WELIKSON & ROSEN, P.C., CAROLE A. FEIL,
as Executors of the Estate of LOUIS FEIL, CAROLE A.
FEIL and JEFFREY FEIL, d/b/a CLERMONT YORK
ASSOCIATES and BROADWALL MANAGEMENT
CORPORATION, ANDREW RATTNER, VIVIAN
TOULIATOS, ABERILL, JOSE ANTONIO (a/k/a TONY)
RUIZ, CARLOS GUEVARA, CARL LIEBERMAN,
NANCY S. LIEBERMAN (a/k/a NANCY S. LITTMAN),
BRETT LIEBERMAN, JAY ANDERSON and JAY
ANDERSON, as Trustee of THE FEIL FOUNDATION,
ALAN ROSENBLOOM, NICOLE L. GOZ, BERNARD J.
GOZ, BELLA M. GOZ (a/k/a BELLA M. MEIKSON),
STANLEY KALLMANN, BRIAN J. BOLAN, GENNET
KALLMANN ANTIN & ROBINSON, P.C., AMERICAN
INTERNATIONAL GROUP and ATLANTIC MUTUAL
INSURANCE COMPANY,

                    Defendants.

: Case Number: 07-CV-6624 (PKC)

**DEFENDANTS STANLEY
KALLMANN, BRIAN J.
BOLAN, GENNET,
KALLMANN ANTIN &
ROBINSON, P.C., AND
ATLANTIC MUTUAL
INSURANCE COMPANY'S
ANSWER TO AMENDED
COMPLAINT, AFFIRMATIVE
DEFENSES, DESIGNATION
OF TRIAL COUNSEL AND
ANSWER TO CROSS-CLAIM**

---

**[DOCUMENT ELECTRONICALLY FILED]**

Defendants Stanley Kallmann, Brian J. Bolan, Gennet, Kallmann, Antin & Robinson, P.C. and Atlantic Mutual Insurance Company, as and for an answer to plaintiffs' amended complaint, sets forth the following:

## AS TO THE NATURE OF THE ACTION

Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the statements and/or allegations contained in that section of plaintiffs' complaint regarding entitled "NATURE OF THE ACTION" .  To the extent that this section of plaintiffs' complaint makes allegations against these answering defendants, same are denied.

## AS TO JURISDICTION AND VENUE

Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the statements and/or allegations contained in that section of plaintiffs' complaint entitled "JURISDICTION AND VENUE".  To the extent that this section of plaintiffs' complaint makes allegations against these answering defendants, same are denied.

## AS TO PARTIES AND ACTIVITIES

1.      Answering defendants deny paragraph "1".

## AS TO THE FIRST CAUSE OF ACTION

2.      Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the allegations contained in paragraph "2" of the subject amended complaint, and leave plaintiffs to their proofs.  To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

3.      Paragraph "3" of the amended complaint does not assert a cause of action against these answering defendants.  Answering defendants are without sufficient information to form a belief as to the truth and accuracy of either the facts and the allegations contained in paragraph "3"

of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

4.    Paragraph "4" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "4" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

5.    Paragraph "5" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "5" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

6.    Paragraph "6" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "6" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is

alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

7.    Paragraph "7" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "7" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

8.    Paragraph "8" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "8" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

9.    Paragraph "9" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "9" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants

which would support a cause of action against these answering defendants, same are denied.

      10.    Paragraph "10" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "10" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

      11.    Paragraph "11" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "11" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

      12.    Paragraph "12" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "12" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

13.    Paragraph "13" of the amended complaint does not assert a cause of action against these answering defendants.  Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "13" of the subject amended complaint, and leave plaintiffs to their proofs.  To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

14.    Paragraph "14" of the amended complaint does not assert a cause of action against these answering defendants.  Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "14" of the subject amended complaint, and leave plaintiffs to their proofs.  To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

15.    Paragraph "15" of the amended complaint does not assert a cause of action against these answering defendants.  Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "15" of the subject amended complaint, and leave plaintiffs to their proofs.  To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

16.    Paragraph "16" of the amended complaint does not assert a cause of action against these answering defendants.  Answering defendants are without sufficient information to form a

belief as to the truth and accuracy of the facts and allegations contained in paragraph "16" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

17.    Paragraph "17" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "17" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

18.    Paragraph "18" of the plaintiffs' amended complaint is a photocopy of a letter and does not assert a cause of action against these answering defendants. To the extent paragraph "18" is alleged to constitute a cause of action, same is not applicable to the answering defendants and answering defendants leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

19.    Paragraph "19" of the plaintiffs' amended complaint is a photocopy of a letter and does not assert a cause of action against these answering defendants. To the extent paragraph "19" is alleged to constitute a cause of action, same is not applicable to the answering defendants and answering defendants leave plaintiffs to their proofs. To the extent that this paragraph is alleged

to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

20.     Paragraph "20" of the plaintiffs' amended complaint is a photocopy of a letter and does not assert a cause of action against these answering defendants. To the extent paragraph "20" is alleged to constitute a cause of action, same is not applicable to the answering defendants and answering defendants leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

21.     Paragraph "21" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "21" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

22.     Paragraph "22" of the amended complaint does not assert a cause of action against these answering defendants. To the extent plaintiffs contend that paragraph "22" does allege a cause of action against these answering defendants, same is denied. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the allegations contained in paragraph "22" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants,

or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

23.    Answering defendants deny paragraph "23".

## AS TO THE SECOND CAUSE OF ACTION

24.    Answering defendants repeat and re-allege each and every answer contained in the above paragraphs as if set forth fully at length herein.

25.    Paragraph "25" does not assert a cause of action against these answering defendants. To the extent plaintiffs contend that paragraph "25" does allege a cause of action against these answering defendants, same is denied.

## AS TO THE THIRD CAUSE OF ACTION

26.    Paragraph "26" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "26" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

27.    Paragraph "27" of the plaintiffs' amended complaint is a photocopy of a letter and does not assert a cause of action against these answering defendants. To the extent paragraph "27" is alleged to constitute a cause of action, same is not applicable to the answering defendants and answering defendants leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that

purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

28.    Paragraph "28" of the plaintiffs' amended complaint is a photocopy of a verified complaint and does not assert a cause of action against these answering defendants. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

29.    Paragraph "29" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "29" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

30.    Paragraph "30" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the allegations contained in paragraph "30" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

31.    Answering defendants deny paragraph "31".

## AS TO THE FOURTH CAUSE OF ACTION

32.    Answering defendants repeat and re-allege each and every answer contained in the above paragraphs as if set forth fully at length herein.

33.    Answering defendants deny paragraph "33".

## AS TO THE FIFTH CAUSE OF ACTION

34.    Paragraph "34" of the amended complaint does not assert a cause of action against these answering defendants.  Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "34" of the subject amended complaint, and leave plaintiffs to their proofs.  To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

35.    Paragraph "35" of the amended complaint does not assert a cause of action against these answering defendants.  Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and  allegations contained in paragraph "35" of the subject amended complaint, and leave plaintiffs to their proofs.  To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

36.    Answering defendants deny paragraph "36".

## AS TO THE SIXTH CAUSE OF ACTION

37.    Answering defendants repeat and re-allege each and every answer contained in the above paragraphs as if set forth fully at length herein.

38.     Answering defendants deny paragraph "38".

## AS TO THE SEVENTH CAUSE OF ACTION

39.     Paragraph "39" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "39" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

40.     Paragraph "40" of the amended complaint asserts a multitude of facts and allegations of which only some apply to these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "40" of the subject amended complaint which relate to other parties in this action, and leave plaintiffs to their proofs. These answering defendants specifically deny the allegations against them in paragraph "40" of plaintiffs' complaint. These answering defendants admit that Gennet, Kallmann, Antin and Robinson, P.C., as attorneys for Atlantic Mutual Insurance Company, properly moved for dismissal of plaintiff's appeal based on plaintiff's failure to comply with Section 640.6(a) of the Rules of Practice which requires an appellant to procure the Clerk's return and file it within thirty days after filing the Notice of Appeal. Answering defendants also admit that the backer for one of the three motions filed pursuant to Section 640.6(a) was not hand signed, but deny that the failure to hand sign the backer was intentional or that it has the effect that plaintiff claims.

## AS TO THE EIGHTH CAUSE OF ACTION

41.    Answering defendants repeat and re-allege each and every answer contained in the above paragraphs as if set forth fully at length herein.

42.    Answering defendants deny paragraph "42".

43.    Paragraph "43" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "43" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

44.    Paragraph "44" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "44" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

45.    Paragraph "45" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "45" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is

alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

46.    Paragraph "46" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "46" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

47.    Paragraph "47" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "47" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

48.    Paragraph "48" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "48" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extent it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

49.     If paragraph "49" is asserted to pertain to answering defendants, answering defendants deny paragraph "49".

50.     Any alleged suffering and continuing suffering and irreparable loss and injury, mental anguish, humiliation and embarrassment alleged by the plaintiffs is not the result of any activity engaged in by these answering defendants. Paragraph "50" is denied.

51.     Paragraph "51" of the amended complaint does not assert a cause of action against these answering defendants. Answering defendants are without sufficient information to form a belief as to the truth and accuracy of the facts and allegations contained in paragraph "48" of the subject amended complaint, and leave plaintiffs to their proofs. To the extent that this paragraph is alleged to assert a cause of action or claim against these answering defendants, or to the extend it is alleged that purported facts asserted in this paragraph relate to actions by these answering defendants which would support a cause of action against these answering defendants, same are denied.

**WHEREFORE**, answering defendants respectfully request dismissal of the plaintiffs' amended complaint in its entirety, together with cost of court, as well as dismissal of all the relief requested in the complaint, as well as dismissal of paragraphs "1", "2", "3", "4", "5", "6", "7", "8", "9", "10", "11", "12", "13", "14", "15" and "16" of the "Wherefore" clause.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The plaintiffs' complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff Swiskey has lack of standing to maintain this claim.

### THIRD AFFIRMATIVE DEFENSE

The plaintiffs' claims are barred by the doctrines of *res judicata* and collateral estoppel.

## RESERVATION OF DEFENSES

The answering parties reserve the right to assert any and all other defenses, both factual and

legal, as may be justified by information subsequently obtained.

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that, Brian J. Bolan, Esq., is hereby designated Trial Counsel.

## ANSWER TO CROSSCLAIMS

Defendants  Stanley Kallmann, Brian J. Bolan, Gennet, Kallmann, Antin & Robinson, P.C.

and Atlantic Mutual Insurance Company hereby deny any liability asserted against them in any cross-

claims that have been filed, or will in the future be filed, against them.

> GENNET, KALLMANN, ANTIN & ROBINSON, P.C.
> Attorneys for Defendants Stanley Kallmann, Brian J.
> Bolan, Gennet, Kallmann, Antin & Robinson, P.C. and
> Atlantic Mutual Insurance Company
> 45 Broadway Atrium, Litman Suite
> New York, NY 10006
> (212) 406-1919
> Our File No. 98-4150:118.0040-B
>
>
> BY: S/     BRIAN J. BOLAN  (BJB3046)
>      BRIAN J. BOLAN, ESQ. (3046)

DATED:  March 21, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID GORDON and JACQUELINE SWISKEY,          :

                            Plaintiffs,     : Case Number: 07-CV-6624 (PKC)

                                            :

vs.          : **CERTIFICATION OF SERVICE**

BRIAN PALUMBO, NILES WELIKSON, HORING          :
WELIKSON & ROSEN, P.C., CAROLE A. FEIL,
as Executors of the Estate of LOUIS FEIL, CAROLE A.          :
FEIL and JEFFREY FEIL, d/b/a CLERMONT YORK
ASSOCIATES and BROADWALL MANAGEMENT          :
CORPORATION, ANDREW RATTNER, VIVIAN
TOULIATOS, ABERILL, JOSE ANTONIO (a/k/a TONY) :
RUIZ, CARLOS GUEVARA, CARL LIEBERMAN,
NANCY S. LIEBERMAN (a/k/a NANCY S. LITTMAN),          :
BRETT LIEBERMAN, JAY ANDERSON and JAY
ANDERSON, as Trustee of THE FEIL FOUNDATION,          :
ALAN ROSENBLOOM, NICOLE L. GOZ, BERNARD J.
GOZ, BELLA M. GOZ (a/k/a BELLA M. MEIKSON),          :
STANLEY KALLMANN, BRIAN J. BOLAN, GENNET
KALLMANN ANTIN & ROBINSON, P.C., AMERICAN          :
INTERNATIONAL GROUP and ATLANTIC MUTUAL
INSURANCE COMPANY,          :

                             Defendants.          :

---

**[DOCUMENT FILE D ELECTRONICALLY]**

       BRIAN J. BOLAN, ESQ., of full age, states and certifies as follows:

       1.      I am attorney for defendants Stanley Kallmann, Brian J. Bolan, Gennet, Kallmann,

Antin & Robinson, P.C. and Atlantic Mutual Insurance Company in connection with the above

matter.

2.    On March 21, 2008, I served, via U.S. regular mail, a true copy of an Answer to Amended Complaint upon plaintiffs pro se David Gordon and Jacqueline Swiskey.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

> GENNET, KALLMANN, ANTIN & ROBINSON, P.C.
> Attorneys for Defendants Stanley Kallmann, Brian J. Bolan, Gennet, Kallmann, Antin & Robinson, P.C. and Atlantic Mutual Insurance Company
> 45 Broadway Atrium, Litman Suite
> New York, NY 10006
> (212) 406-1919
> Our File No. 98-4150:118.0040-B
>
>
> BY: S/    BRIAN J. BOLAN  (BJB3046)
>       BRIAN J. BOLAN, ESQ. (3046)

DATED:  March 21, 2008

# EXHIBIT C

*received 2/22/00*
*3:30*

Index Number Purchased November 5, 1997

## Supreme Court of the State of New York
## County of New York

Index No. 605662/97

Plaintiff(s) designates
NEW YORK
County as the place of trial

DAVID GORDON,

   – against –

                        Plaintiff(s)

CHARLES BRINKMAN, CHARLES J. REILLY, JR.,
ARNOLD EISENBERG, DEBRA BALDWIN, JOHN PULLARA,
EDWARD R. REILLY & CO., INC., LONG ISLAND CARPET
CLEANERS, INC., HERBERT L. JAMISON & CO.,
CENTENNIAL INSURANCE COMPANY and ATLANTIC MUTUAL
INSURANCE COMPANY.

                        Defendant(s)

The basis of the venue is
Plaintiff Resides In
New York County

## Summons with Notice

Plaintiff(s) reside(s) at
444 East 82nd Street
New York, New York 10028
County of New York

To the above named Defendant(s)

## You are hereby summoned

to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein

Dated, November 3, 1997

Defendants' Addresses:

Charles Brinkman
395 North Service Road
Melville, New York 11747

Charles J. Reilly, Jr.
18 John Street
New York, New York 10038

Arnold Eisenberg
301 Norman Avenue
Brooklyn, New York
11222

Debra Baldwin
100 Executive Drive
West Orange, New
Jersey 07052

John Pullara
100 Executive Drive
West Orange, New Jersey
07052

Edward R. Reilly & Co.,
Inc., 18 John Street
New York, New York 10038

Long Island Carpet
Cleaners, Inc.
301 Norman Avenue
Brooklyn, New York
11222

Herbert L. Jamison &
Co., 100 Executive
Drive, West Orange,
New Jersey 07052

Centennial Insurance
Company, 100 Wall Street
New York, New York 10005

Atlantic Mutual Insurance
Company, 100 Wall Street
New York, New York 10005

Notice: The nature of this action is, inter alia: fraud,
breach of and interference with contract; predicate
acts; violation of New York's insurance law.
The relief sought is money damages and such other relief
as set forth in the complaint.

Attorney(s) for Plaintiff(s)
Office and Post Office Address

DAVID GORDON
444 EAST 82ND STREET
NEW YORK, NEW YORK  10028

Upon your failure to appear, judgment will be taken against you by default for the sum of $13,500,000, with interest from dates referenced in the accompanying complaint, plus punitive damages and such attorneys fees and tripling of damages as may be permitted or required by law.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------x
DAVID GORDON,

                              Plaintiff,              COMPLAINT

        - against -                          Index No. 605662/97

CHARLES BRINKMAN, CHARLES J. REILLY, JR.,
ARNOLD EISENBERG, DEBRA BALDWIN, JOHN PULLARA,
EDWARD R. REILLY & CO., INC., LONG ISLAND CARPET
CLEANERS, INC., HERBERT L. JAMISON & CO.,
CENTENNIAL INSURANCE COMPANY and ATLANTIC MUTUAL
INSURANCE COMPANY.

                              Defendants.
------------------------------------------x

        Plaintiff, DAVID GORDON, complaining of all defendants,

Charles Brinkman, Charles J. Reilly, Jr., Arnold Eisenberg, Debra

Baldwin, John Pullara, Edward R. Reilly & Co., Inc., Long Island

Carpet Cleaners, Inc., Herbert L. Jamison & Co., Centennial

Insurance Company and Atlantic Mutal Insurance Company alleges:

                <u>AS AND FOR A FIRST CAUSE OF ACTION</u>

        1.  At all times hereinafter mentioned, plaintiff was and

still is a citizen of New York, resident in New York County at

444 East 82nd Street, New York, New York  10028.  Plaintiff

brings this action as the actual, intended victim of a covert,

Byzantine, wildly unlawful scheme, and malicious, ongoing

unlawful action, activities and behavior by all the defendants,

to effectively deprive plaintiff of home insurance policy coverage

and claim benefits unlawfully, and severely damage plaintiff

emotionally, financially, and otherwise.

                              - 1 -

2.  At all times hereinafter mentioned, defendants Centennial Insurance Company and Atlantic Mutual Insurance Company, which appear to not only share personnel, facilities and money, but to act together and be under common control (referenced collectively herein-after as " Atlantic Mutual ") were, and, upon information and belief, still are among the larger insurance company groups in the United States, with Executive Offices in New York, City, New York.  They are licensed to do business in New York and are so doing, with various offices and agents, including a claims office in Melville, New York. Upon information from New York's Insurance Department Atlantic Mutual has, over its years of doing business in New York and elsewhere, been sued, fined and otherwise penalized by both Federal and New York and other State courts, and the Insurance Department of New York and other states, in proceedings too numerous to recount, for a wide range of unlawful conduct, including fraud, breach of contract and violations of State insurance laws.

3.  Defendant Charles Brinkman (referenced hereinafter as " Brinkman "), at all times hereinafter mentioned was one of Atlantic Mutual's Senior Claims Representatives at its Melville, New York Claims Office.  Upon information and belief, Brinkman has been paid substantial sums by Atlantic Mutual over the years and is one of their highest rank-ing and highest paid claims executives, and is compensated in and by some means that, in part, reflects the insurance company's success in NOT PAYING CLAIMS, such as plaintiff's entirely proper, but completely unpaid water damage insurance contract claims discussed below in more detail.  Brinkman intentionally involved himself, as a major participant, including direct written and telephone communications with plaintiff,

in New York State, in the wildly unlawful actions, activities and behavior referenced below to harm plaintiff. Brinkman was personally involved in the wildly unlawful scheme of the defendants, referenced below, to make certain plaintiff's entirely proper water damage policy claim would never actually be voluntarily paid and that plaintiff's expensive replacement cost insurance policy contract with insurer defendant Atlantic Mutual be rendered of no benefit to plaintiff unlawfully. Brinkman was directly involved in the actions, activities and behavior of all the other defendants, including the wire and mail fraud aspects, and may have personally received, or be in line to receive, the highest percentages of monetary benefit among all the individual defendants. Upon information and belief, Brinkman may not have been licensed properly in New York State to engage in claims activities relating to New York policy holders.

4.  In November 1996, by massive mail fraud, Brinkman perpetuated all the defendants' wrongdoing and attempted to further impair plaintiff's rights. Brinkman had previously, on or about February 22, 1996, during a telephone conversation, volunteered and expounded to plaintiff about the dangerous chemical and health aspects of water-logged carpeting and padding material, and was fully aware of plaintiff's very difficult situation, having also received certified mail correspondence from plaintiff concerning the claim (which is all included herein in its entirety by reference). Nevertheless, after realizing plaintiff had discovered the bad faith and other unlawful actions, activities and behavior to badly harm plaintiff Brinkman was orchestrating, he mailed the libelous and grossly fraudulent letter reprinted in its entirety below. The letter is not simply

- 3 -

substantially false.  It is a desperate attempt by the defendants to

self-exculpate their wildly unlawful behavior with even more fraud.

5.  BRINKMAN'S LIBELOUS CONCEALMENT FRAUD LETTER

 **AtlanticMutual Companies**

Atlantic Mutual Insurance Company
Centennial Insurance Company

Melville Claims Services
395 North Service Road
Post Office Box 9090
Melville, New York 11747-9090

516 454-0200
914 681-0661
Fax: 516 391-5949

November 4, 1996

Mr. David Gordon
444 East 82nd Street (34B)
New York, NY  10028

Re:     Claim No.:        20-884738NN
        Policy No.:       525860133
        Date of Loss:     January 22, 1996
                          Water Damage

Dear Mr. Gordon:

A review of our file on the captioned matter reveals that you have submitted a partial claim in the amount of $15,474.29 for the replacement of carpeting and two Lexan carpet chair protectors.  We understand that the original invoice for the installation of the carpeting is not available.  Our investigator has advised us that in his opinion the figure for replacement of the carpeting is excessive.  His further inquiries revealed that the firm which furnished the estimate never inspected the carpeting.  Their estimate was based solely on information furnished by you over the telephone.  They never inspected the carpet, never measured the carpeting or had a sample for comparison.

In consultation with this office, it was agreed that we would have the carpeting examined by an appraiser.  We understand when the appraiser contacted you to arrange for the necessary inspection, access to your apartment was refused.

- 4 -

BRINKMAN'S LIBELOUS CONCEALMENT FRAUD LETTER CONTINUED

We direct your attention to the policy conditions as found on Form KH4, page 7 of 13,
**SECTION 1 - CONDITIONS**

    2.    **Your Duties After Loss.** In case of a loss to which this insurance
may apply, you shall see that the following duties are performed;

        c.    Prepare an inventory of the damaged personal property
showing, in detail, the quantity, description, actual cash
value and amount of loss. Attach to the inventory all
bills, receipts and related documents that substantiate the
figures in the inventory;

CB7107L.PLL

November 4, 1996
Claim No.:   20-884738NN
Page 2

    d.    As often as we reasonable require;

        (1)    Exhibit the damage property;

        (2)    Provide us with records and documents we
request and permit us to make copies; and

        (3)    Submit to examinations under oath and
subscribe the same.

Your failure to cooperate in the investigation of your claim could seriously jeopardize
the recovery of your damages. This could ultimately result in the denial of the entire
matter.

We would like to bring this matter to an equitable conclusion to all parties concerned and
solicit your cooperation in this endeavor.

Please contact me toward this end.

- 5 -

<u>BRINKMAN'S LIBELOUS CONCEALMENT FRAUD LETTER CONTINUED</u>

Very truly yours,

Charles O. Brinkman
Senior Claims Representative

CB:pll-4

cc:    Herbert L. Jamison and Company, Inc.
       Edward R. Reilly and Company


CB7107L.PLL

6.   Obviously prepared with the assistance of Atlantic Mutual's
abusive lawyers, Brinkman's letter is false and fraudulent and defen-
dants  knew full well the letter was false, fraudulent and absurd when
they composed it and mailed it.  Said statements by defendant Brinkman
and Atlantic Mutual were not only false and known to be completely
false when made, but had no reasonable basis in <u>ACTUAL</u> historical fact.
The statements were made knowingly with an express intent to damage
plaintiff and were libelous <u>per se</u>.  Said false statements, made with
reckless disregard for the truth, were made to harm plaintiff and dis-
credit him.  Said false statements were defamatory when uttered and
written, were wanton, wilful, malicious and libelous <u>per se</u>, and
plaintiff is entitled to punitive damages.  Said defamation and publica-
tion thereof was not privileged.  No defendant was privileged to engage
in any aspect of said defamation, and no privilege attached to said
defamation because of any reason or circumstance.

7.   Defendant Charles J. Reilly, Jr. (referenced hereinafter as
" Reilly "), at all times hereinafter mentioned, was a principal at
his family's firm of insurance adjustors, Edward R. Reilly & Co., Inc.,

- 6 -

located at the firm's Manhattan, New York office, and engaged by

Brinkman to represent Atlantic Mutal in dealing with plaintiff's

unpaid water damage claim referenced hereinabove and hereinafter,

that was, upon information and belief, so successful previously at

preventing and/or impairing Atlantic Mutual policy holders like

plaintiff from receiving benefits they were contractually entitled

to, that Altantic Mutual and Brinkman have repeatedly engaged Riley

and his firm to perpetrate his customary claims behavior.  Upon

information and belief, Riley and his family firm are not only paid

wholly, or in part, out of money that Atlantic Mutual policyholders

have been deprived of by Riley and Riley-related firm activities,

but may have, also at the expense of Atlantic Mutual policyholders,

additional profitable arrangements with defendant Brinkman and

defendants Arnold Eisenberg and Long Island Carpet Cleaners, Inc.,

one of Eisenberg's companies.  In addition to another Eisenberg

entity called American Fire Restoration.  Upon information and belief,

Reilly may not have been licensed by New York State to engage in

insurance claims activities relating to New York policyholders (including

plaintiff).  Upon information and belief, Reilly and his family firm have

been paid very large sums of money by Atlantic Mutual and its employees

over the years and are one of, if not its cumulatively-highest-paid

so-called adjustment contractors in the New York City area, and are

essentially compensated in and by some means that, in part, reflects

the insurance company's success in NOT PAYING CLAIMS; such as plaintiff's

entirely proper, but completely unpaid water damage insurance contract

claim discussed below in more detail.  Reilly was deeply and personally

involved in the wildly unlawful scheme of the defendants, referenced

- 7 -

below, to make certain plaintiff's entirely proper policy claim
would never actually be voluntarily paid and that plaintiff's
expensive replacement cost insurance policy contract with defendant
Atlantic Mutual be rendered of no benefit to plaintiff unlawfully.
Reilly was directly and deeply involved in the unlawful actions,
activities and behavior of all the other defendants, including the
wire and mail fraud aspects, and may have personally received, or be
be in line to receive, one of the highest percentages of monetary
benefit among all the individual defendants.  Reilly also inten-
tionally and clearly lied and engaged in various unlawful deceit and
fraud during mail, telephone and personal communications with plaintiff
and, purportedly, others concerning, among other things, plaintiff,
plaintiff's claim, and the involvement of other defendants in defen-
dant's unlawful schemes to harm plaintiff.

    8.  Defendant Arnold Eisenberg (hereinafter referenced as
" Eisenberg "), at all times hereinafter mentioned, was a principal
of a Brooklyn, New York firm called Long Island Carpet Cleaners, Inc.
and, upon information and belief, a familiar associate of defendants
Brinkman, Reilly, Reilly's family firm and Atlantic Mutual, all of whom
Eisenberg and his various entitities, including one called American
Fire Restoration, had previously done business with directly or indirectly
for monetary benefit.  Eisenberg and his entities were engaged by the
above-referenced defendants to harmfully interfere unlawfully with
plaintiff's normal life and plaintiff's insurance contract with Atlantic
Mutual and attempted to do so and succeeded.  Said defendants' objectives
included having Eisenberg and his entities assist them in defrauding

- 8 -

plaintiff with regard to plaintiff's still unpaid insurance claim,
and manufacturing one or more fraudulent cover stories for their
already existing record of related unlawful activity by said
defendants.  Defendants Eisenberg and his entities, and their
unlawful actions, activity and behavior in this matter were closely
controlled by Brinkman, Reilly and Atlantic Mutual, who all effec-
tively participated in them.  Upon information and belief, Eisenberg
and his entities have previously received sizable sums from said
defendants and are no strangers to their claims related activities,
and are compensated in and by some means that, in part, reflects
the insurance company's success in NOT PAYING CLAIMS; such as
plaintiff's entirely proper, but completely unpaid insurance contract
claim discussed below in more detail.  Eisenberg was personally
involved in the wildly unlawful schemes of defendants to make certain
plaintiff's entirely proper policy claim would never actually be
voluntarily paid and that plaintiff's expensive replacement cost
insurance policy contract with defendant Atlantic Mutual be rendered
of no benefit to plaintiff unlawfully.  Eisenberg was involved in the
unlawful actions, activities and behavior of all the other defendants,
including the wire and mail fraud aspects, and may have been personally
slated to receive one of the highest percentages of monetary benefit
among all the individual defendants. .Upon information and belief,
Eisenberg may not have been licensed by New York State to engage in
any claims releated activities relating to New York insurance policy-
holders.

9.  Defendant Debra Baldwin (hereinafter referenced as " Baldwin "),
at all times hereinafter mentioned, was a Vice President of insurance

- 9 -

broker Herbert L. Jamison & Co. in that firm's West Orange, New
Jersey headquarters.  The Jamison firm had originally sold plaintiff
his expensive Atlantic Mutual, replacement cost insurance policy
many years ago.  Plaintiff had previously filed no claim ever under
said policy.  Baldwin intentionally mislead plaintiff concerning
the intentions of Brinkman, Reilly and Atlantic Mutual and repeatedly
concealed from plaintiff her knowledge of the defendants' covert,
Byzantine, wildly unlawful scheme to effectively deprive plaintiff
of the beneifts of his expensive, replacement cost insurance policy.
Baldwin was well aware defendants, including her firm, were benefitting
monetarily from plaintiff's policy premium payments, but that Atlantic
Mutual had no intention of honoring the policy, as evidenced by its
refusal to do so and ongoing fraud to first create an illusion that it
was paying the entirely legitimate claim, and then the defendants
further fraud-dance to create a cover story for their original unlawful
actions, activity and behavior.  Baldwin and her employer, defendant
Herbert L. Jamison & Co., engaged in wire fraud during telephone conver-
sations with plaintiff concerning, among other things, defendant's
actual intentions and handling of said claim, which was actually intended
to severely harm plaintiff and enrich the defendants by actually not
paying.  Upon information and belief, Baldwin is a very highly paid,
high ranking member of the highly profitable Jamison organization,
which in part, is rewarded and compensated in and by some means that,
in part, reflects the insurance company's success in NOT PAYING CLAIMS,
such as plaintiff's entirely proper, but completely unpaid insurance
contract claim.  Baldwin was thus personally involved in perpetuating
the wildly unlawful scheme of the defendants to make certain plaintiff's

- 10 -

entirely proper claim would never be voluntarily paid and that plaintiff's expensive replacement cost insurance policy contract with defendant Atlantic Mutual be rendered of no benefit to plaintiff. Baldwin was obviously linked to, and thus involved in the perpetuation of unlawful actions, activities and behavior of all the other defendants, including the wire and mail fraud aspects, and may have personally been slated to receive a materially significant percentage of monetary benefit among all the individual defendants if she could dissuade plaintiff from pressing his claim. Upon information and belief, Baldwin is licensed by New York State, but may not be licensed to engage in claims activities relating to New York policyholders.

10. Defendant John Pullara (hereinafter referenced as " Pullara "), at all times hereinafter mentioned was an insurance sales and service representative at broker Herbert L. Jamison & Co., at the same West Orange, New Jersey headquarters office that defendant Baldwin worked from. Plaintiff's original claim notice, dated January 18, 1996, was directed to Pullara, who was servicing plaintiff at Jamison. Pullara thereafter persuaded plaintiff to substantially increase his coverage under his existing Atlantic Mutual replacement cost policy, after plaintiff had received, per instructions from Reilly and Atlantic Mutual, written estimation of the cost of the carpet replacement part of plaintiff's water damage claim and forwarded same to Reilly and the insurance company, with copies of certain color photos of the water damage Reilly had requested. Pullara was later repeatedly asked by plaintiff for a complete set of the policy, and explained the delay in

- 11 -

providing same variously, attributing it to Atlantic Mutual. Pullara
ultimately mailed plaintiff a set of papers, claiming it was complete,
but it was not. Upon information and belief, Pullara was working closely
with defendant Baldwin and was privy to her information and wrongdoing.
Pullara repeatedly assured plaintiff that his claim would be satisfactorily
settled soon and therefore, engaged in an ongoing concealment fraud over
the telephone, while knowing full well Atlantic Mutual, Brinkman, Reilly
and Reilly's firm had no intention of such settlement. Upon information
and belief, Pullara has been paid significant amounts by Jamison over
the years, is one of their key employees and was and is compensated in
and by some means that, in part, reflects not only Jamison's commissions
on increased business, such as plaintiff's substantial coverage increase,
but the insurance company's success in NOT PAYING CLAIMS, such as plaintiff's
entirely proper, but completely unpaid water damage claim. Pullara was thus
personally involved in the wildly unlawful scheme of the defendants to
make certain plaintiff's claim would never be voluntarily paid and that
plaintiff's expensive replacement cost insurance policy contract with
defendant Atlantic Mutual be actually rendered of no benefit to plaintiff.
Pullara was directly involved in the actions, activities and behavior of
all the other defendants, including the wire and mail fraud aspects and
may have been slated to personally receive a significant percentage of
monetary benefit among the individual defendants. Upon information and
belief, Pullara may not have been licensed by New York State to engage
in claims activities relating to New York policyholders.

- 12 -

11.  Defendant Edward R. Reilly & Co., Inc. (hereinafter referred to as " Reilly & Co. "), at all times hereinafter mentioned was, as noted above, Reilly's family business firm and acted in solido with Reilly in his wrongdoing and liability, as referenced hereinabove and below.  Upon information and belief, Reilly & Co. has been paid very significant amounts of money over the years by Atlantic Mutual, and is compensated in and by some means that, in part, reflects the insurance company's success in NOT PAYING CLAIMS, such as plaintiff's cliams.  Upon information and belief, Reilly & Co. may not have been licensed by New York State to engage in claims activities relating to New York policyholders.

12.  Defendant Herbert L. Jamison & Co. (hereinafter referred to as " Jamison "), at all times hereinafter mentioned was, as noted above, a large, West Orange, New Jersey-based, New York licensed, insurance broker, and had sold plaintiff his insurance policy.  Jamison, Baldwin and Pullara acted in solido with respect to their wrongdoing and liability, as set forth more fully above and below.  Upon information and belief, Jamison has received well over a hundred million dolllars of premium and other income from Atlantic Mutual over the years and is one of Atlantic Mutual's most highly compensated agents.  Jamison is variously protected, in whole or in part, from loss of commission income by Atlantic Mutual, and like other defendants, effectively participates in, and is effectively compensated by, Atlantic Mutual's success in NOT PAYING CLAIMS, such as plaintiff's entirely proper, but completely unpaid claim referenced above and below.

13.  Defendant Long Island Carpet Cleaners, Inc. (hereinafter referred to as " Eisenberg's firm "), at all times hereinafter mentioned

was, as noted above, a Brooklyn based business entity, of which Eisenberg is a principal, and which was controlled, in whole or inpart, by him, along with other entities doing business with Atlantic Mutual, Brinkman, Reilly and Reilly and Co., directly or indirectly.  Like Atlantic Mutual and other defendants herein, Eisenberg's firm appears to qualify as a racketeering enterprise under the RICO law.  Eisenberg's firm acted in solido with Eisenberg in his wrongdoing and liability, as referenced above and below.  Upon information and belief, Eisenberg's firm has been paid very significant amounts of money over the years by Atlantic Mutual, directly and indirectly, through Reilly and Reilly & Co., or otherwise, and is compensated in and by some means that, in part, reflect the insurance company's success in NOT PAYING CLAIMS, such as plaintiff's claims.  Upon information and belief, Eisenberg's firm may not be licensed by New York State to engage in insurance claims activities relating to New York policyholders.

14.  The Defendant's Byzantine secret scheme was conceived and perpetrated without lawful excuse, cause or justification, and with knowledge it would ultimately cause severe mental distress and emotional harm to the plaintiff DAVID GORDON and other manner and forms of financial damage.  As a result of the defendant's scheme plaintiff did finally suffer variously such financial damage and great mental anguish; became nervous, tense, irritable, excited and stopped his normal enjoyment of life, and was forced to endure great mental suffering, and was placed under undue strains and burdens.

15.  As a result of the foregoing, plaintiff demands judgement of Two Million, Five Hundred Thousand Dollars ($2,500,000), before such tripling as the law may allow or require.

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>

16. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1. through 14. inclusive, as is more fully set forth herein.

17. As a result of defendants' wanton, wilful and malicious behavior set forth in the First cause of action, plaintiff is entitled to punitive damages in the amount of Seven Million, Five Hundred Thousand Dollars ($7,500,000).

<u>AS AND FOR A THIRD CAUSE OF ACTION</u>

18. Plaintiff's replacement cost insurance policy contract with Atlantic Mutual (hereinafter referred to as the " policy " or " contract ") was issued many years ago, and all billed premiums were thereafter paid in full by plaintiff. Said policy is included herein in its entirety, and made a part hereof by reference due to its length.

19. Despite plaintiff's entirely proper benefits claim, all the defendants conceived, refined, embellished upon, conspired to implement and variously perpetrated different aspects of their wildly unlaw scheme, ongoing to this day, to deny plaintiff payment of any benefits whatsoever under said policy by fraud, deception, interference with and breach of contract, and violation of New York's insurance law. They have also manufactured one or more fraudulent cover stories to obfuscate and conceal their real intentions and unlawful actions. And defendants have acted to unjustly enrich themselves, via Atlantic Mutual's internal compensation arrangements, and otherwise. Upon information and belief, the arcane Atlantic Mutual arrangements include bonuses and similar incentives and reward type

payments benefitting the defendants for having participated in con-
structing and perpetrating a successful nonpayment of benefits scheme
on plaintiff, regardless of the scheme's illegality (to say nothing of
many other policyholder victims similarly situated).

20. As a result of the foregoing plaintiff demands damages of Three
Million, Five Hundred Thousand Dollars ($3,500,000), before such tripling
as the law may allow or require.

<u>AS AND FOR A FOURTH CAUSE OF ACTION</u>

21. Plaintiff repeats and realleges each and every allegation
contained in paragraphs 1. through 14. and 18. through 19. inclusive, as
if more fully set forth herein.

22. As a result of defendants' wanton, wilful and malicious
bahavior set forth in the Third Cause of action, plaintiff is entitled to
punitive damages in the amount of Ten Million, Five Hundred Thousand
Dollars ($10,500,000).

<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>

23. Brinkman and the other defendants conceived all or part of their
secret Byzantine, wildly unlawful scheme to harm plaintiff sometime before
his November 4, 1996-dated, grossly false and fraudulent letter sent to
plaintiff. Reprinted in its entirety hereinabove, this false, libelous letter,
was, among other things, intended to conceal defendants' real malicious
intentions to withhold payment of all policy benefits to which plaintiff
was entitled, and harm plaintiff emotionally, financially and otherwise.
Brinkman's phony letter, intended to deceive and coerce plaintiff and
create a cosmetic cover for the defendants, was circulated and distributed
to the defendants and others, by mail and otherwise. His letter, upon the
now undeniable existence of defendants ongoing Byzantine scheme to harm

- 16 -

plaintiff unlawfully, constitutes prima facia RICO fraud (over which the trial courts of New York State have concurrent jurisdiction).

24. Brinkman knew and had good reason to know, that his self-serving concealment fraud letter was permeated wiht false and fraudulent information to fraudulently obfuscate and conceal defendants' malicious scheme. Brinkman and the other defendants were clearly anticipating being sued. Brinkman's letter is so fraudulent even the so-called " Date of Loss " at the top of the letter has also been misrepresented. Brinkman's threatening letter is obviously extortionate on its face. It is also clearly an extortion attempt upon the ACTUAL facts and circumstances of this matter. In addition to being obvious RICO mail fraud, Brinkman's letter also clearly constitutes an ongoing RICO extortion memorial. Some of the other defendant perpetrator-participants are obviously referenced, though not by name or ACTUAL role.

25. From the beginning, defendants' actions, activities and behavior constituted the quintessence of bad faith dealing, and defendants' bad faith never ended. Though repeatedly told by Jamison's people, whose office had originally sold plaintiff his policy and promised to faithfully service plaintiff, that plaintiff would ultimately be paid all benefits for the claim, plaintiff has never been paid a penny.

26. All of defendants' above referenced actions, activity and behavior was unlawful, wanton, wilfull and malicious, and intended to severely harm plaintiff while benefitting defendants. Defendants' actions, activity and behavior was also maliciously intended, through such fraudulent and otherwise unlawful behavior, to defame and taint plaintiff and inflict as much financial and emotional distress upon plaintiff as they possibly could, and in fact did so in an ongoing manner.

- 17 -

All of the defendants' improper conduct, individually and collectively, was not only wanton, wilful and malicious, but was outrageous.

27. Defendants were also well aware plaintiff suffered from hypertension and intentionally sought to maliciously increase plaintiff's blood pressure and cause him great anxiety.

28. Plaintiff, in good faith, had obviously taken great pains to purchase an expensive, broad coverage, replacement cost policy from Atlantic Mutual, via Jamison, that would serve plaintiff throughout all his covered years.

29. Defendant Atlantic Mutual, it is now clear from its ongoing failure and refusal to properly pay benefits to plaintiff on the one and only policy claim filed by plaintiff, never intended to pay any claims filed, and intended to fraudulently manufacture a cosmetic cover story to obfuscate its unlawful behavior at the first opportunity. The first opportunity arose with plaintiff's first claim, and plaintiff is entitled to a refund of the total of all premiums plaintiff has paid.

30. Jamison, Atlantic Mutual's agent, with whom plaintiff had for years previously done business, repeatedly ressured plaintiff that plaintiff should not worry and should not bring legal action because Jamison would get plaintiff's claim paid. Jamison repeatedly stated that plaintiff's claim should be paid and that Atlantic Mutual ultimately would pay plaintiff's claim. Said reassurances, relied on by plaintiff, were, as evidenced by Atlantic Mutual's continued failure and refusal to pay, obviously fraudulent. Jamison's people, Baldwin and Pullara, knew plaintiff actually trusted them and was relying on their representations, and knew, and had reason to know that any encouragement they might have been getting from the other defendants to discourage plaintiff from bringing suit was actually

- 18 -

intended to fraudulently mislead plaintiff, David Gordon, but would indefinitely be accepted at face value. As a result of the foregoing plaintiff demands damages of Two Million, Five Hundred Thousand Dollars ($2,500,000), before such tripling as the law may allow or require.

### AS AND FOR A SIXTH CAUSE OF ACTION

31. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1. through 14., 18. through 19., and 23. through 30. inclusive, as if more fully set forth herein.

32. As a result of defendants' wanton, wilful and malicious behavior set forth in the Fifth cause of action, plaintiff is entitled to punitive damages in the amount of Seven Million, Five Hundred Thousand Dollars ($7,500,000).

### AS AND FOR A SEVENTH CAUSE OF ACTION

33. Despite the facts that all the defendants were fully aware that plaintiff was absolutely entitled to a speedy claims settlement and was being very seriously damaged by their actions, activities and behavior, they persisted. As a result of the defendants' actions plaintiff suffered great mental anguish, became nervous, tense, irritable, excited, stopped his normal enjoyment of life, was forced to endure great mental suffering, and was placed under undue strain and burdens. Defendants unlawful activity, action and behavior was not only fraudulent and calculated to severely dis-tress and disturb plaintiff, but was wanton, wilful and malicious and a prima facie violation of RICO law, and plaintiff is entitled to punitive damages and an automatic tripling of damages.

34. Upon information and belief, defendants have: entered fraudulent information into their various computer systems and paper filing systems; have altered and/or deleted, and/or obliterated evidence of such fraudu-

lent tampering; and have otherwise tampered with accurate information pertaining to plaintiffs claims, and those of policy holders and insureds similarly situated; and have transmitted interstate, by wire and otherwise, such tampered-with information.  As a result of the foregoing plaintiff demands damages of Two Million, Five Hundred Thousand Dollars ($2,500,000), before such tripling as the law may allow or require.

### AS AND FOR AN EIGHTH CAUSE OF ACTION

35.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1. through 14., 18. through 19., 23. through 30., and 33. through 34. inclusive, as if more fully set forth herein.

36.  As a result of defendants' wanton, wilful and malicious behavior set forth in the Seventh cause of action, plaintiff is entitled to punitive damages in the amount of Seven Million, Five Hundred Thousand Dollars ($7,500,000).

### AS AND FOR A NINTH CAUSE OF ACTION

37.  Plaintiff submitted only one claim under said policy contract. All plaintiff's submitted papers for said claim are also included herein in their entirety, and made a part hereof by reference due to their bulk. These papers, when viewed together, clearly establish that they were entirely proper and accurate, yet, in order to fraudulently manufacture an excuse to obfuscate their own unlawful scheme to deny plaintiff's benefits defendants have had Brinkman resort to wild mail fraud and libel.

38.  Defendants' various fraudulent maneuvering was repeatedly attempted, by mail and telephone.  Moreover, it was done with defendants acting in conspiracy and in concert with each other, and with malice, and with an intent to both punish plaintiff for exercising his legal right to

properly attempt to collect benefits he was entitled to under his policy, and to ultimately inflict mental distress upon David Gordon. Defendants knew they were acting in concert and in a conspiracy to inflict great present and future mental distress, anguish and suffering upon plaintiff.

39. The aforesaid actions were also intended to intimidate, harass and dissaude plaintiff, and compel him to refrain from exercising his legal rights to collect money rightfully due him, as well as, via their ongoing scheme, to maliciously and intentionally inflict emotional harm. Defendants acted with a reckless disregard for the truth and the law. Defendants sought to set up plaintiff for ridicule and scorn and to have him held up to such ridicule and scorn by prospective lawyers, judges and jurors and to cause him future embarassment and humiliation. Because of the defendants ongoing scheme to actually refuse benefit payments, while having Jamison repeatedly say payment would be made, plaintiff was repeatedly distracted from concentrating on his affairs, lost vital sleep, and lost potential business income. Defendants' secret scheme was also, effectively, an unlawful effort to extort, by deception, a de facto permanent waiver from plaintiff of his rights to use legal process against the defendants. Defendants were well aware they were weakening plaintiff financially by their behavior.

40. As a result of the foregoing plaintiff demands damages of Two Million, Five Hundred Thousand Dollars ($2,500,000), before such tripling as the law may allow or require.

### AS AND FOR A TENTH CAUSE OF ACTION

41. Plaintiff repeats, and realleges each and every allegation contained in paragraphs 1. through 14., 18. through 19., 23. through 30.,

- 21 -

33. through 34. and 37. through 39. inclusive, as if more fully set forth herein.

42. As a result of defendants' wanton, wilful and malicious behavior set forth in the Ninth cause of action, plaintiff is entitled to punitive damages in the amount of Severn Million, Five Hundred Thousand Dollars ($7,500,000).

WHEREFORE, plaintiff demands judgement against the defendants as follows:

1. An Order directing Atlantic Mutual to instantly pay plaintiff, with interest, the already documented portion of plaintiff's pending claim.

2. An Order against Atlantic Mutual and all present and future employees, agents and attorneys to forever administer the policy of plaintiff in the most conscientious, good faith manner, pay all policy claims promptly, and to refrain from and avoid all abuse, of any nature whatsoever.

3. Judgement of Two Million, Five Hundred Thousand Dollars ($2,500,000) on the First cause of action.

4. Judgement of Seven Million, Five Hundred Thousand Dollars ($7,500,000) on the Second cause of action.

5. Judgement of Three Million, Five Hundred Thousand Dollars ($3,500,000) on the Third cause of action.

6. Judgement of Ten Million, Five Hundred Thousand Dollars ($10,500,000) on the Fourth cause of action.

7. Judgement of Two Million, Five Hundred Thousand Dollars ($2,500,000) on the Fifth cause of action.

- 22 -

8.  Judgement of Seven Million, Five Hundred Thousand Dollars ($7,500,000) on the Sixth cause of action.

9.  Judgement of Two Million, Five Hundred Thousand Dollars ($2,500,000) on the Seventh cause of action.

10. Judgement of Seven Million, Five Hundred Thousand Dollars ($7,500,000) on the Eighth cause of action.

11. Judgement of Two Million, Five Hundred Thousand Dollars ($2,500,000) on the Ninth cause of action.

12. Judgement of Seven Million, Five Hundred Thousand Dollars ($7,500,000) on the Tenth cause of action.

13. Such tripling of the above judgement amounts as the law may allow and/or require; plus interest; attorney's fees, and all disbursement and costs.


DATED:  NEW YORK, NEW YORK
        NOVEMBER 3, 1997



                              DAVID GORDON
                              PLAINTIFF PRO SE
                              444 EAST 82ND STREET
                              NEW YORK, NEW YORK  10028
                              212 628-6051



- 23 -

STATE OF NEW YORK )
                         )ss.:
COUNTY OF NEW YORK)

DAVID GORDON, being duly sworn, states that he is the plaintiff in this action and that the foregoing complaint is true to his own knowledge except as to matters therein stated to be alleged on information and belief and as to those matters he believes it to be true.

DAVID GORDON

Sworn To Before Me This
3rd Day Of November, 1997

NOTARY PUBLIC

STEVEN VIENER
NOTARY PUBLIC, State of New York
No. 31-4698510
Qualified in New York County
Commission Expires Oct. 31, 1999